Brown Estate

*Edward B. Doran,* for petitioner.

*Smith, Best & Horn* and *Walls, Rial & Morrell,* contra.

COPELAND, P. J., February 16, 1955.—This is a proceeding under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended, to declare the rights of the parties in an unfunded insurance trust. The settlor was J. Emerson Brown, now deceased. There is no dispute as to the facts and the following facts appear from the petition and answer and from the stipulation of all the parties in interest.

### Findings of Fact

1. J. Emerson Brown died, testate, on November 11, 1953, and was survived by his son, James Emerson

Brown, 3rd, and by Margaret Post Brown, his widow, who is the petitioner in this proceeding. James Emerson Brown, 3rd, is a minor, and Vincent E. Williams, an attorney at this bar, was appointed as his guardian ad litem.

2. Under date of January 22, 1940, the settlor entered into an agreement with the Barclay Westmoreland Trust Company of Greensburg, under which the settlor deposited with the bank certain insurance policies and which agreement provided for disposition of the proceeds of the policies upon the death of the settlor. By the terms of this agreement, as will more fully appear from the copy thereof attached to the petition, the settlor retained complete control of the insurance policies and the proceeds thereof during his lifetime, and the bank, named as trustee, had no authority whatever during the life of the settlor other than acting as custodian of the policies.

3. The premiums on all policies were paid by the settlor during his lifetime.

4. The agreement of January 22, 1940, was amended by a supplemental agreement under date of May 3, 1949, whereby the settlor revoked the provisions for disposition of the proceeds after his death and the supplemental agreement provided for a different disposition, but to the same beneficiaries. The terms of that supplemental agreement appear in full by the copy thereof attached to the answer to the petition.

5. The widow, Margaret Post Brown, by her election duly filed, elected to take against the will of decedent and against the trust.

6. The widow had no known participation in the creation of this original agreement or any amendments thereto.

7. The settlor deposited with the bank the following insurance policies, and disposition of them was made as follows:

| Date Received | Company and Number | | Returned to Donor | Proceeds Received |
|---|---|---|---|---|
| 6/25/40 | Northwestern Mutual ... | 2,675,385 | 3/28/45 | |
| 6/25/40 | Provident Mutual ...... | 430,263 | 3/28/45 | |
| 6/25/40 | Prudential Insurance ... | 2,769,482 | 6/19/44 | |
| 3/28/45 | Prudential Ins. $5,000 .. | 13,118,638 | | $ 5,176.13 |
| 3/28/45 | Provident Mut. $10,000.. | 1,011,220 | | 10,138.75 |
| 3/28/45 | Reliance Life (now Lincoln National) $10,000 | 943,299 | | 9,749.97 |
| 1/25/49 | Provident Mutual $5,000 | 439,263 | 3/10/52 | |
| 1/25/49 | Northwestern Mutual... | 4,151,034 | | 20,279.22 |
| 1/25/49 | Northwestern Mutual... | 2,675,385 | | 5,933.63 |
| 4/21/49 | Northwestern Mutual $10,000 ............ | 4,174,684 | | |
| | (This policy on life of James E. Brown, 3rd) | | | |

Total proceeds .................................... $51,277.70

Less amount of loan repaid to Barclay Westmoreland
    Trust Company from proceeds ................. 4,030.00

Net proceeds held in trust ........................ $47,247.70

## Discussion

The widow is entitled to take one half of the trust estate for two reasons: First, the trust agreement was a testamentary disposition, and second, the widow is entitled to consider the trust as a testamentary disposition under section 11 of the Estates Act of April 24, 1947, P. L. 100.

By the terms of the trust agreement, the Barclay Bank, named as the trustee in the agreement of January 22, 1940, was in fact only the agent of J. Emerson Brown until his death. The agreement set up an unfunded insurance trust. By the terms of the agreement the trustee held the insurance policies "without any obligation of any nature in respect thereto, other than the safe keeping thereof, during the life of the grantor", and the agreement further provided "it being understood that this trust shall be operated only with respect to the proceeds of said policies,

which may be due and payable upon the death of the grantor".

The settlor reserved to himself the right by his own act alone to amend, revoke, change the beneficiaries, borrow against the policies, receive all income and benefits during his life and all rights of administration of the fund including the right to withdraw from the operation of the agreement any and all the policies and to revoke the agreement.

Under these facts the trustee was only the agent of the settlor during his lifetime and insofar as the disposition was intended to take effect after his death it is testamentary. See A. L. I. Restatement of the Law of Trusts, §57 (2). The widow is therefore entitled to her elective share regardless of when the trust was created: Vederman Estate, 78 D. & C. 207; 2 Fid. Rep. 596. However, the provisions of the Wills Act having been complied with, the trust is valid as a testamentary disposition subject to the rights of the widow to take against this trust. The distinction between insurance owned outright and an insurance trust is discussed below.

The widow is entitled to treat this trust as a testamentary disposition under section 11 of the Estates Act of 1947, which reads, in part, as follows: "A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved".

The first question under section 11 is whether or not this is a conveyance within the meaning of the Estates Act. This act defines "conveyance" as follows: " 'Conveyance' means an act by which it is intended to create an interest in real or personal property

whether the act is intended to have inter vivos or testamentary operation".

Some authorities are doubtful whether section 11 applies to insurance held outright by the insured. It is not necessary to decide that question in this case. Bregy states, page 5867, of his book, Intestate, Wills and Estates Act of 1947, that whatever rule is applied to insurance owned outright should also apply to unfunded insurance trusts. With this latter statement this court cannot agree. When a trust is set up, as here, certain conditions are attached to the fund which would be impossible to arrange under the provisions of a policy itself. Some of these conditions as found in the present case are strings attached to the mode and time of payment to beneficiaries, the purpose for which the funds may be used, and a power in the trustee to control, in his discretion, the investment of funds, the sale of assets and the amount and time of payments to the beneficiaries.

To say that the transfer of insurance policies to a trustee under these conditions is not a conveyance completely overlooks the real effect of the transfer. In Fidelity Trust Company v. Union National Bank of Pittsburgh et al., 313 Pa. 467, where there was an unfunded insurance trust and the question was whether a creditor could reach the trust funds, it is argued that the donor withdrew nothing from the creditor to pay the premiums and it was said by the court at page 481: "This argument disregards the true nature of the transaction. Each policy was a chose in action, an obligation to pay the insured's legal representatives on his death, . . . That obligation was of value to the insured's creditors; . . . By conveying that asset in fraud of creditors' rights, a constructive trust resulted for their benefit; . . ."

And further an attempt to distinguish between premiums, cash surrender value and proceeds of a

policy is not justified. All these matters are bound up in one policy and were all conveyed to the trustee by the assignment of the policy, and by payment of the premiums for the benefit of the trust.

The next question is whether the Estates Act is applicable to this case with reference to the effective date of the act. Section 21 of the Estates Act provides that it shall apply only to conveyances effective on or after January 1, 1948. It was decided in McKean Estate, 366 Pa. 192, that section 11 of the act did not apply to a trust created before the act and where the settlor died after January 1, 1948. The basis of this decision was that the interests of the beneficiaries were vested by the terms of the trust and were not mere expectancies but were present vested interests.

In the present case these vested interests, as described in McKean Estate, were created on January 22, 1940, by article 2, secs. A and B of the trust agreement. These interests of beneficiaries were divested on May 3, 1948, by a supplemental agreement wherein paragraphs A and B of article 2 were revoked and a new set of interests were created. It also appears that new conveyances to the trust were made on January 25, 1949, and April 21, 1949, by the transfer of additional policies. Certainly there was no conveyance effective as to these policies until after January 1, 1948.

It therefore appears that section 11 of the Estates Act is applicable to the whole fund in the hands of the trustee and the widow, Margaret Post Brown, being entitled to one half of the estate is entitled to one half of the assets in this trust, including the cash surrender value on November 11, 1953, of the policy on the life of James E. Brown, 3rd.

In view of the fact that the widow elected to take against both the will and this trust, it is unnecessary to decide whether the beneficiaries under the trust are

entitled to take the full amount of the proceeds of the policy or the net proceeds after the payment of the loan to the Barclay Westmoreland Trust Company in the amount of $4,030. The widow was entitled to one half the net estate and it is immaterial for the purpose of this proceeding whether or not the loan to the Barclay Bank is paid out of this fund or out of the general estate of decedent.

### Conclusions of Law

1. Margaret Post Brown, the widow of J. Emerson Brown, deceased, is entitled to one half of the net proceeds of the trust for the reason that the agreement of January 22, 1940, and the supplemental agreement, thereto, were testamentary dispositions by decedent.

2. Margaret Post Brown, the widow of J. Emerson Brown, deceased, is entitled to take against the trust for the reason that the supplemental agreement of May 3, 1948, was a conveyance within the meaning of section 11 of the Estates Act of 1947.

3. The costs of this proceeding shall be paid by the estate.

### Decree

And now, February 16, 1955, this matter having been submitted to the court upon petition and answer and stipulation, and after argument,

It is ordered, adjudged and decreed that Margaret Post Brown, widow of J. Emerson Brown, deceased, is entitled to take against the trust created by the agreement between decedent and the Barclay Westmoreland Trust Company, dated January 22, 1940, and amended May 3, 1948, and by virtue of said election the widow is entitled to one half the net proceeds of the trust or $23,623.85 plus the cash surrender value as of November 11, 1953, of the policy on the life of James Emerson Brown, 3d, issued by the Northwestern Mutual Insurance Company, no. 4,174,-684, subject, however, to the rights of creditors and

the personal representative of J. Emerson Brown, deceased.