Henderson Estate.

Argued November 18, 1958.   Before Jones, C. J.,
Bell, Musmanno, Jones, Cohen and Bok, JJ.

*William Jay Leon,* for appellant.

*George M. Brodhead,* with him *Robert E. Jones,
J. Eustace, Jr.,* and *Moffett, Frye & Leopold,* for appellee.

*Robert A. Webster*, with him *Henry A. Frye, Frank J. Eustace, Jr.*, and *Moffet, Frye & Leopold*, for appellee.

*Philip A. Brégy*, with him *Earle N. Barber, Jr.*, and *MacCoy, Evans & Lewis*, for appellees.

OPINION BY MR. JUSTICE BELL, March 16, 1959:

These appeals raise the following questions: (1) Is a widow who takes against her husband's will entitled thereby to share in the proceeds of certain policies of insurance upon his life; and (2) did the Orphans' Court have jurisdiction to decide the rights of the widow to the policies or the proceeds thereof?

John R. Henderson died on November 9, 1957, leaving a will dated October 28, 1957. Henderson in his will gave his personal effects to his son who was his only child, his residence to his wife, and his residuary estate in trust for his wife for her life and after her death to persons whose names and interests are immaterial. He left an estate of approximately $126,000. Unfortunately for his residuary legatees and for his widow's present claim, he included in his will a tax clause directing that all taxes be paid out of his residuary estate.

Henderson took out three policies of insurance on his life, all of which were in force at his death. On June 5, 1920, Henderson took out a life insurance policy with the Prudential Insurance Company of America in the amount of $10,000; and on February 18, 1926, he took out a life insurance policy with the Equitable Life Insurance Company of Iowa in the amount of $25,000.* In each policy he reserved the right to change the beneficiary by written notice to the Company. In each policy his wife was originally named as the beneficiary. In each policy he changed the beneficiary

---

* The third policy will be discussed hereinafter.

several times—in each instance naming a beneficiary other than his wife. His final change in the Prudential policy occurred on April 28, *1952,* at which time he named as beneficiary "Ruth Bjornsgaard, Sister of the Insured, if living, otherwise Catherine K. Yardley, Friend of the Insured". Both his sister and Miss Yardley survived Henderson. Henderson's final change of beneficiary in his Equitable policy occurred on January 17, *1952,* at which time he named "Catherine K. Yardley Primary Beneficiary, [and] First Contingent Beneficiary [his] Estate". Miss Yardley survived Henderson. The insured paid all the premiums on each of these policies, and the policies at his death were found in his possession. Henderson's widow was never notified nor did she acquiesce in any changes of beneficiary.

Henderson's widow duly filed an election to take against his will and against the life insurance policies which she claimed were testamentary conveyances of her husband's assets.

The Wills Act of April 24, 1947,* §8, gives to a surviving spouse a right of election to take against the will of her deceased spouse. A surviving spouse who elects to take against the will, where the testator leaves only one child, ". . . shall be entitled to one-half of the real and personal estate of the testator". It will, of course, be noted that "the real and personal estate of the testator" is not defined, and that insurance is not mentioned.

A named beneficiary in a life insurance policy— where the insured reserves the right to change the

* P. L. 89, 20 PS §180.8. The Act provides in subsection (c) of §8 that a surviving spouse who elects to take against a will shall not be entitled to any share in property passing under a power of appointment given by some one other than the testator and exercised by the testator.

beneficiary—has no vested interest in the policy or its proceeds during the insured's lifetime. While the authorities are not in accord as to whether the beneficiary's interest is testamentary, the later cases hold that such a beneficiary has only an expectancy: *Bayer's Estate*, 345 Pa. 308, 26 A. 2d 202; *Knoche v. Mutual Life Insurance Co.*, 317 Pa. 370, 176 A. 230; *Riley v. Wirth*, 313 Pa. 362, 169 A. 139; *Irving Bank v. Alexander*, 280 Pa. 466, 124 A. 634; *Weil v. Marquis*, 256 Pa. 608, 101 A. 70; *Fidelity Trust Co. v. Travelers' Insurance Co.*, 320 Pa. 161, 181 A. 594.

In *Knoche v. Mutual Life Insurance Co.*, 317 Pa., supra, the Court said (pages 371, 372) : "Where the right to change the beneficiary has been reserved in a life insurance policy, the beneficiary named has but a mere expectancy with no vested right or interest during the lifetime of the insured: Riley v. Wirth, 313 Pa. 362, 367; Irving Bank v. Alexander, 280 Pa. 466, 470; Weil v. Marquis, 256 Pa. 608, 614, 37 C.J. 579, section 345 . . .

"Where, however, the designation of the beneficiary in the policy is absolute and unconditional because the right to change the beneficiary is not expressly reserved to the insured, the beneficiary has a vested interest in the policy and cannot be deprived of its proceeds by anything the insured may do without the beneficiary's consent. . . .: Joyce on Insurance, 2d ed., volume 2, section 730a, 731; Smith v. Metropolitan Life Ins. Co., 222 Pa. 226; [Entwistle v. Travelers' Insurance Company, 202 Pa. 141, 51 A. 759] ; Schuberth v. Prudential Ins. Co., 86 Pa. Superior Ct. 80."

It was well settled, prior to 1948, that the proceeds of a life insurance policy which was payable to a named beneficiary other than the insured's executors or his estate,—irrespective of whether a right to change the beneficiary was or was not reserved by the insured—

were not a part of the insured's estate, and neither the widow, if she took against the will, nor his creditors (after his death) were entitled to any part thereof: *Wilson Estate*, 363 Pa. 546, 70 A. 2d 354; *Burton's Estate*, 20 D. & C. 566, 567; 46 C.J.S. §1157. Cf. *Bayer's Estate*, 345 Pa., supra; *Knoche v. Mutual Life Insurance Co.*, 317 Pa., supra; *Riley v. Wirth*, 313 Pa., supra; *Irving Bank v. Alexander*, 280 Pa. supra; *Weil v. Marquis*, 256 Pa., supra; *Fidelity Trust Co. v. Travelers' Insurance Co.*, 320 Pa., supra; 46 C.J.S. §1157.

In *Wilson Estate*, 363 Pa., supra, the Court said (pages 549-550) : ". . . Proceeds of life insurance policies made payable to designated beneficiaries are exempted from transfer inheritance tax . . . They form no part of the deceased insured's estate: [citing cases]."

In 46 C.J.S. §1157, the law is aptly stated: "Policy Payable to Third Person

"The proceeds of a policy naming a third person as beneficiary generally belong to him as an individual and do not constitute part, or an asset, of the insured's estate.

"The proceeds of a life insurance policy in which a third person is named as beneficiary belong exclusively to such beneficiary as an individual; they are not the property of the heirs or next of kin of insured, are not subject to administration or the laws of descent governing the distribution of insured's personal property, and generally do not constitute any part, or an asset, of his estate."

Some apparent inconsistencies in the authorities dealing with life insurance are sometimes explained by the accepted doctrine that life insurance is generally regarded as sui generis.

The Legislature may create or modify or destroy a wife's statutory right to take against her husband's

will during the life of the spouse, but not after the spouse's death: *Crawford Estate,* 362 Pa. 458, 464-465, 67 A. 2d 124; *Melizet's Appeal,* 17 Pa. 449; *Moninger v. Rittner,* 104 Pa. 298; *Scaife v. McKee,* 298 Pa. 33, 148 A. 37.

The widow claims that her rights in these life insurance policies were changed and enlarged by the Estates Act of April 24, 1947,* and that one-half of the proceeds of the life insurance policies are included within her election to take against her husband's will and against these policies, under and by virtue of §11 of that Act, and under *Brown Estate,* 4 Pa. D. & C. 2d 722, which was affirmed in a brief Per Curiam opinion by this Court in 384 Pa. 99, 119 A. 2d 513.

Section 11 of the Estates Act of 1947 pertinently provided: "A *conveyance of assets*** by a person who retains . . . a power of revocation over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned . . ." The word "conveyance" is defined in §1(2) of the Act as follows: " 'Conveyance' means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation."

Section 21 provides that the Act "apply only to conveyances on or after [January 1, 1948]." The final change of beneficiary in each of these policies was made, it will be recalled, in 1952.

In *McKean Estate,* 366 Pa. 192, 77 A. 2d 447, this Court decided*** that a surviving spouse who elected to take against the will was not entitled under §11 of the Estates Act of April 24, 1947, to any share in the

---

* P. L. 100, 20 PS §301.11.

** Italics throughout, ours.

*** Upon the audit of the account of the inter vivos trustee.

222

*revocable inter vivos trust* which was created by her husband in March, 1947. The trust was created prior to the Estates Act; the settlor died two years after the Estates Act. The trust was composed of real estate, cash and other personal property, but did not include any insurance. Most of the income was payable to settlor for life, after his death to his wife for life, with remainder interests which are not pertinent. Settlor reserved the right to alter, revoke, or change the trust—these rights of alteration and revocation he never exercised. The widow contended that §11 of the Estates Act of 1947 was applicable because the conveyance did not become effective, but was testamentary or a mere expectancy, until the death of her husband which occurred after the effective date of the Act. The Court rejected this contention, and speaking through Mr. Justice STEARNE, said (page 195) :

"Prior to the Estates Act of 1947, this Court repeatedly decided that where a settlor, by his deed vests a present interest in the beneficiaries but reserves a beneficial interest and also a power to revoke or modify the deed in whole or part, such interests are not thereby constituted mere expectancies but are *present vested interests* :* Dickerson's Appeal, 115 Pa. 198, 8 A. 64; Lines v. Lines, 142 Pa. 149, 21 A. 809; Dolan's Estate, 279 Pa. 582, 124 A. 176; Shapley Trust, 353 Pa. 499, 46 A. 2d 227; Lyon Trust, 164 Pa. Superior Ct. 140, 63 A. 2d 415. See also: Restatement, Trusts, Sec. 57 (1) ; 43 Harvard Law Review p. 521; 78 University of Pennsylvania Law Review p. 626; Scott on Trusts, Sec. 57.1." See to the same effect *Windolph v. Girard Trust Company,* 245 Pa. 349, 91 A. 634; *Beirne v. Continental-Equitable Title & Trust Co.,* 307 Pa. 570, 161 A. 721; *Fidelity Trust Company, Admr. v.*

---

* This had been the well settled law of Pennsylvania since 1887.

*Union National Bank of Pittsburgh et al.,* 313 Pa. 467, 169 A. 209; *Reese's Estate,* 317 Pa. 473, 177 A. 792.

Then came *Brown Estate,* 4 Pa. D. & C. 2d 722, which is so strongly relied upon by the widow. In *Brown Estate,* the husband died testate November 11, 1953, survived by a widow and a son. His widow elected to take against her husband's will and against an inter vivos trust agreement made by him with the Barclay Westmoreland Trust Company dated January 22, 1940. This trust agreement was a mere shell. Under its terms settlor deposited with the bank certain insurance policies. The trust provided for the disposition of the proceeds of these policies upon the death of the settlor. It was an unfunded insurance trust and under the trust agreement the trustee held the insurance policies merely as a custodian. The settlor reserved to himself the right to revoke the trust, to change the beneficiaries, to administer the fund, to withdraw any or all the policies, to borrow against the policies and to receive all the income during his life.* The trust agreement was amended by a supplemental agreement dated May 3, *1948*; this amendment provided for a different disposition of the proceeds of the insurance policies after his death but to the same beneficiaries. The lower Court held (1) that under the particular facts of that trust agreement the trust agreement and the supplemental agreement were testamentary; (2) that "the trustee was only the agent of the settlor during his lifetime and insofar as the disposition was intended to take effect after his death it is *testamentary"*; and (3) that the interests of the beneficiaries *were divested on May 3, 1948* and a new set of interests were created by the amendment of May 3, 1948, and also by the transfer of additional insurance policies in 1949; and (4) that the widow, under her election to take against the trust,

---

* The provisions for remainder interests have no pertinency.

"is entitled to one-half of the net proceeds of the trust for the reason that the supplemental agreement of May 3, 1948, was a conveyance [of assets] within the meaning of §11 of the Estates Act of 1947."*

The Legislature changed the decision in *Brown Estate* by an amendment to §11 of the Estates Act of 1947, dated February 17, 1956,** effective April 1, 1956. This amendment provided with respect to "Conveyances to Defeat Marital Rights" the following addition to §11: "(a): The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent whether payable in trust or otherwise."

The Joint State Government Commission appended the following comment to this amendment:

"COMMENT—1956 amendment—The last sentence is added to eliminate uncertainties as to the application of this section to life insurance. Lower court opinions which have dealt with the subject gave no clear indication of the extent to which Section 11, as drafted in 1947, would have been applied to life insurance. See Auch Est., 4 Fiduc. Rep. 113; Brown Est., 5 Fiduc. Rep. 113."

In *Martin Estate,* 365 Pa. 280, 74 A. 2d 120, this Court said (page 283): ". . . in ascertaining the legislative meaning, . . . the report of a legislative commission or a Senate or House committee may, if obscurity or ambiguity exists, be considered: National Transit Company v. Boardman, 328 Pa. 450, 197 A. 239; Tarlo's Estate, 315 Pa. 321, 172 A. 139."

It is clear that the amendment of §11(a) in 1956 was passed by the Legislature for purposes of clarifi-

---

* The lower Court also stated by way of dictum that the rule applicable to unfunded insurance trusts was not applicable to insurance owned outright.

** P.L. 1073, 20 PS §301.11.

cation and in order to make certain that, effective as of April 1, 1956, §11 which gave an "electing widow" certain rights, shall not apply to life insurance policies purchased by a decedent, whether payable to a third party beneficiary or to a trustee for certain persons and purposes.

Since some doubt apparently remained on the question of whether the designation of beneficiaries in a policy of life insurance, or the creation of an unfunded revocable insurance trust was testamentary, the Estates Act of 1947 was further amended on July 11, 1957,* in order to make clear that such acts were not testamentary. This was accomplished by adding a new section:

"Section 8. Designation of Insurance Beneficiaries Not Testamentary.

"The designation of beneficiaries of life insurance shall not be considered testamentary, regardless of whether the insurance contract designates the ultimate beneficiaries or makes the proceeds payable, directly or indirectly, to a trustee of a trust under a will or under a separate trust instrument which designates the ultimate beneficiaries, and regardless of whether any such trust is amendable or revocable, or both, or is funded or unfunded, and notwithstanding a reservation to the settlor of all rights of ownership in the insurance contracts." The Joint State Government Commission made the following comment: "This section would replace section 8 of the Estates Act which was omitted when the rule against accumulations was changed. It has two purposes. The most important is to make it clear that unfunded insurance trusts *are not testamentary* and to that extent the law as stated in Brown Estate, 384 Pa. 99 is changed. . ."

---

* P.L. 792, 20 PS §301.7(a).

The widow, nevertheless, contends that *the insured's change of beneficiary* in *1952* was, as to each of said life insurance policies,* a conveyance of assets within the meaning of §11 of the Estates Act of 1947, and that the above quoted amendments of 1956 and of July 1957 are inapplicable, and cannot defeat her vested rights.

Prior to 1948, the law, as we have seen, was clearly settled that where an insured reserved the right to change the beneficiary in a life insurance policy taken out by him, neither the widow nor any of his creditors have any interest in or right to the proceeds of these policies at his death, if the policy is made payable to a named third party beneficiary. In other words, the widow had *no vested right* in these policies or the proceeds thereof, *and neither the policies nor the proceeds were ever a part of the insured's estate.* We decide that the naming of a third party beneficiary in a life insurance policy—in the light of the history of the law of this Commonwealth with respect to life insurance which, as we have seen, is sui generis, and in the light of the statutory and public policy of our State to protect named third party beneficiaries—was not "a conveyance of [a husband's] assets" within the somewhat ambiguous language of §11 of the Estates Act of 1947; and that section was not intended to include, and did not give to a widow who elected to take against her husband's will, the proceeds of such a policy of life insurance.

## The Unfunded Revocable Insurance Trust

A much closer question arises, however, with respect to an unfunded revocable insurance trust which Henderson made in 1952. Henderson had taken out another policy with the Equitable Life Insurance Company of Iowa on February 18, 1926, in the sum of

---

* And as to the deed of trust, hereinafter discussed.

$85,000, which was payable to Henderson's wife. He changed his beneficiary on May 5, 1926, and appointed a National Bank as trustee. After several changes, the policy was made payable on July 31, 1941, to his son. On February 13, *1952*, Henderson executed an unfunded revocable insurance trust naming a trust company, now known as Girard Trust Corn Exchange Bank, as trustee, and delivered to the trustee as the only asset of the trust the above mentioned life insurance policy, after changing the beneficiary from his son to the Bank-trustee. The deed of trust provided that the trustee should collect (at the settlor's death) the proceeds of the policy,* and divide the income between his sister, Ruth, and Catherine K. Yardley, with remainder to the sister's issue. On September 4, 1953, settlor amended the deed of trust by making a different distribution to his life tenants and remaindermen. On October 28, *1957*, Henderson again amended the trust by revoking its dispositive provisions and providing that the income should be paid to his sister and Miss Yardley and the survivor of them, with remainder interests as therein more specifically set forth. Henderson's widow was never mentioned as a beneficiary in this deed of trust either as to income or principal, and had never been the named beneficiary in the life insurance policy since May 5, 1926. The trustee was merely the depository of the policy, with no obligation or active duties until after Henderson's death. Premiums were paid by Henderson, the settlor, and not by the trustee. The settlor reserved the right to amend the trust and to change the trust beneficiaries, which he did, as above set forth. He likewise reserved the right to revoke the trust but never exercised this right.

The trustee was a mere custodian, the trust was a mere shell. When the trust was created in 1952 or

---

* It has collected the proceeds of this policy.

228

amended in 1953, it was a "conveyance of assets" within the meaning of §11 of the Estates Act, and under *Brown Estate,* supra, the widow would have been entitled to one-half of this unfunded insurance trust under her election to take against her husband's will and against this conveyance, if no changes had been made by the above mentioned Legislative Acts of 1956 and 1957, and by the settlor himself in October 1957. However, on October 28, *1957,* Henderson amended this insurance trust by changing the beneficiaries and their rights and interests thereunder—after the Legislature had clearly stated (a) in 1956 that a spouse's right to take against the will and against a conveyance of assets should not apply to any contract of life insurance purchased by the decedent, whether payable in trust or otherwise; and (b) in 1957 that the designation of beneficiaries of life insurance shall not be considered testamentary regardless of whether the proceeds were payable to a named third party individual or to a testamentary trustee, or to an inter vivos trustee, and regardless of whether the trust was amendable or revocable or both, or funded or unfunded.

The persons who were named by Henderson on October 28, *1957,* as beneficiaries under the provisions of this insurance trust acquired whatever rights they had at that time. Since the trust was merely a revocable shell, they acquired only an expectancy. However, even under the Estates Act of 1947, Henderson's widow had no vested rights therein prior to his death. Whatever rights the widow might have therein arose only upon the death of the insured; and she then acquired only such rights as the Legislature chose to give her by statute, and these statutory rights could, as we have seen, be changed or modified or increased or destroyed by statute. While this unfunded insurance trust was a "conveyance of assets" within the meaning of §11

of the Estates Act of 1947, it is clear (1) that under §11(a) of the Estates Act, which was effective as of April 1, 1956, a widow's right to take against her husband's will and against a conveyance of his assets did not include and was not applicable to any contract of life insurance purchased by a decedent whether payable in trust or otherwise; and (2) that under §8 of the 1957 Amendment to the Estates Act of 1947 Henderson's unfunded insurance trust was not testamentary. It follows that Henderson's widow has no rights in his inter vivos unfunded insurance trust and no rights in or to any of the proceeds of the life insurance policy which was included in the inter vivos trust which Henderson created in 1926 and *amended in 1957*.

## Jurisdiction

We likewise agree with the Orphans' Court (a) that it had jurisdiction to try title to and the widow's rights in the life insurance policies which were in the possession of the decedent at his death, and (b) that the executors were properly directed to deliver such policies to the named beneficiaries.

It is well settled that the jurisdiction of the Orphans' Court is entirely statutory: *Rogan Estate,* 394 Pa. 137, 145 A. 2d 530.

The Orphans' Court Act of 1951,* as amended, provides in Article III: "Jurisdiction. The Orphans' Court shall have exclusive jurisdiction of (1) Decedents' estates . . . (2) Testamentary trusts . . . (3) Inter vivos trusts. The administration and distribution of real and personal property of inter vivos trusts whether created before or after the effective date of this act** . . . ."

---

* P. L. 1163, 20 PS §2080.301 et seq.

** With exceptions which are not now pertinent.

In *Rogan Estate*, supra, the Court said (page 140):
" 'This section [Article III, §301] considerably broadened the scope of the court's jurisdiction and jurisdiction now exists where the following situations arise: (1) If the personalty was in decedent's possession, actually or presumptively, at the time of death; (2) if the personalty came into the possession of decedent's personal representative subsequent to his death;* (3) if neither (1) nor (2) exist, but if the personalty was "registered" in the name of decedent or his nominee [or in the name of decedent and/or other persons]; (4) if there is an allegation by the personal representative that the personalty was in possession of the decedent when he died.' "

It is contended that the Orphans' Court has no jurisdiction over these life insurance policies because neither they nor their proceeds are part of a decedent's estate, and because under the 1956 amendment to the Estates Act a wife acquires no interest in a contract of life insurance by virtue of taking against her husband's will and against a conveyance of his assets. While this contention sounds plausible, it overlooks the fact that the Orphans' Court was given by the Legislature jurisdiction of personal property of the decedent if the personal property, namely, the life insurance policies, were in decedent's possession actually or presumptively at the time of his death.

We hold (1) that the Orphans' Court had jurisdiction of these life insurance policies which were in decedent's possession at the time of his death, and therefore had the right and power to determine whether the widow had any title or rights in the policies or the proceeds thereof under her election to take against her

---

* This includes an agent or attorney employed by the executor or administrator. See *Webb Estate*, 391 Pa. 584, 138 A. 2d 435.

husband's will and against a conveyance of his assets; and (2) that the Orphans' Court correctly decided that the widow had no title or interest therein, and wisely directed the executors to deliver the policies to the respective named beneficiaries.

The unfunded insurance trust presents a more difficult problem. The Equitable Life Insurance Company paid to the Girard Trust Corn Exchange Bank which was trustee under the above mentioned inter vivos trust and also the named beneficiary in the policy, the proceeds of the $85,000 life insurance policy. The trustee had this policy in its possession at the time of Henderson's death. Upon a proper accounting by the inter vivos trustee, the Orphans' Court would have jurisdiction to determine title to this fund and the widow's rights therein, since the Orphans' Court is given jurisdiction over inter vivos trusts.

However, the question here involved arose before the Orphans' Court not sur an account of the inter vivos trustee but sur the widow's election to take against her husband's will* and against his alleged testamentary conveyance of his assets,** and therefore jurisdiction in the Orphans' Court can attach only if it is granted by §11(d) of the amendment to the Estates Act of 1947 dated April 1, 1956. One of the main purposes of the Estates Act of 1947 was, as its title recites, "Relating to the . . . rights of a surviving spouse in property as to which the decedent has retained certain powers". The Act dealt, inter alia, with "conveyances to defeat marital rights", and contained provisions in §11 with respect to "a conveyance of assets by a person who retains . . . a power of revocation . . .''; and it provided for an election by a surviving spouse to take against a conveyance of assets by a deceased spouse.

---

* An executor's account had not yet been filed.
** I.e., his life insurance policies.

Section 11 (d) of the 1956 Amendment provides: ". . . the *Orphans' Court* on application of the surviving spouse made within [one year of the conveyor's death] may, [if there is no will], extend the time for making the election . . . . The court having jurisdiction of the deceased conveyor's estate shall determine the rights of the surviving spouse in the property included in the conveyance."

Henderson's unfunded insurance trust agreement dated February 3, 1952, was a conveyance by (Henderson) the decedent of (part of) his assets even though, because of the hereinabove mentioned amendments to the Estates Act which were made in 1956 and in 1957, his surviving spouse acquired no rights thereunder. The Orphans' Court has jurisdiction of the "deceased conveyor's estate". While the matter is not free from doubt, it would appear that the Legislature intended to give to the Orphans' Court in cases such as this, jurisdiction to determine *the rights of the surviving spouse* in Henderson's conveyance, namely, his deed of trust dated February 3, 1952, as amended in 1957, and in the proceeds of the life insurance policy which was included in Henderson's conveyance.

The Decree is affirmed, each party to pay their respective costs.