## Clephane Trust

*Russell J. Brownback* and *Rodney T. Bonsall*, for accountant.

*Robert B. Brunner* and *Robert F. Lehman*, for petitioner.

TAXIS, P. J., February 9, 1965.—The account now before the court reflects the administration of this trust from its commencement through August 13, 1964. It shows a net balance for distribution of $73,-709.88, composed of 25 shares of Tennessee Gas Transmission Company 5.24 percent preferred, $2,504.00; $9,000 American Telephone and Telegraph Company debentures $9,215.97; $2,355.18 due from the estate of Arthur H. Clephane, deceased, and cash . . .

The reason or purpose for the filing of this account is the death of the settlor on February 7, 1961. In addition, certain legal problems have arisen as a result of the election of decedent's surviving spouse, Anne Laird Clephane, which was executed by her on January 16, 1962, and duly recorded. In that election, in addition to taking against decedent's will, Mrs. Clephane also elected to take ". . . against all conveyances within the scope of Subsection (a) of section 11 of the Estates Act of 1947 . . ." It is, therefore, necessary for this court to decide to what extent such election encompasses the corpus of this trust.

Decedent and his wife, Isabella M. Clephane, were divorced on January 4, 1956. In June 1955, decedent had executed two inter vivos revocable trusts, the first relating to a certain parcel of residential real estate, and enabling Isabella M. Clephane to occupy the same until remarriage, and the second to provide Mr. Clephane with a personal residence for his use and occupancy during life. Both trusts contained remainder provisions in favor of the Clephane children. The present trust was created shortly after the divorce, on February 1, 1956, and was originally a life insurance trust, but provided for the addition of other property from time to time under certain conditions. On February 2, 1956, one day after its creation, decedent amended the two earlier trusts, providing for them to pour over into the latter one, making it alone the governing instrument, not only for the insurance policies but also the properties included in the prior trusts.

On October 25, 1958, settlor married Anne Laird Clephane. On July 6, 1962, Isabella M. Clephane remarried, and this terminated all of her rights under, and interest in, the present trust.

Anne Laird Clephane contends that her election extends to, and includes, the entire corpus of this trust on the theory that its operation is essentially testa-

mentary and defeats her marital rights in her husband's property. She is opposed by Cassin W. Craig, Esq., who was appointed guardian and trustee ad litem by this court to represent the interests of decedent's minor children, as well as any unborn or unascertained persons who might have a remainder interest.

The present corpus of the trust here accounted for consists of the following three types of property: (1) Decedent's share of the profits of his law firm for a period of one year after his death, due him under his partnership agreement; (2) proceeds from the sale after decedent's death of certain residential real esstate comprising the corpus of the earlier inter vivos trusts referred to previously, and (3) proceeds of certain life insurance policies which comprised the original fund for this trust when it was created.

The applicable statute is section 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.11. As originally enacted, that section read as follows:

"A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor."

Effective April 1, 1956, among other amendments, the following sentence was added:

"The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise": Act of February 17, 1956, P. L. (1955) 1073.

The act which added this sentence also provided that section 11, as amended, would apply only to conveyances effective on and after April 1, 1956.

Considering first the portion of the trust consisting of partnership profits and the proceeds of decedent's real estate, we find circumstances which meet exactly the conditions laid down by section 11 of the Estates Act to subject property to a widow's election. By paragraph 7 of the trust indenture, settlor expressly reserved ". . . to himself by his own act alone the right to change beneficiaries, obtain and receive advances and loans, dividends and distributable shares of surplus, all without the consent, approval or joinder of the Trustee or any beneficiary of this Trust. In addition thereto Settlor expressly reserves the right to alter, amend or revoke completely this Indenture of Trust . . ." In addition, although in paragraph 2(a) of the indenture, settlor allocates the income of the trust in equal shares for the maintenance, support and education of his sons during their minority, by other language in paragraph 2(a) and 2(e) none of the sons had a right to receive such income in cash until attaining 21, and, further, settlor expressly provided that ". . . no income under this Trust shall vest in the beneficiaries unless and until the same is actually paid over to them . . ." At settlor's death, the sons were minors, and even the occupancy rights of his first wife in the real estate have since been terminated by her remarriage. There are, consequently, no rights of any income beneficiary under the statute paramount to those of the surviving spouse.

In order to offset the plain meaning of the statutory language, the guardian and trustee ad litem argues that it operates legally only upon "Conveyances to Defeat Marital Rights", basing this contention upon the title of section 11 adopted at the time of the 1956 amendment. Thus, it is contended that the heading requires in every case proof of an intent on the part of the settlor to defeat his spouse's marital rights, and that such an intent cannot be found here, inasmuch

as the present trust was created more than two years prior to decedent's marriage to Anne Laird Clephane. The title in question, however, is not necessarily more than a description of the subject matter treated by the section, and it would not be reasonable for this language alone to engraft such a severe limitation on its application. In addition, our Supreme Court had said, ". . . the Act is confirmatory of a long existing public policy of the Commonwealth to protect the rights of widows, and irrespective of the husband's motive in creating an inter vivos trust which excludes his widow from participation in the trust fund, any doubt as to the effectiveness of the trust in this regard should be resolved in favor of the widow": Pengelly Estate, 374 Pa. 358, 369.

The guardian and trustee ad litem also has attempted to draw an analogy from section 5(a) of the Intestate Act of April 24, 1947, P. L. 80, sec. 5, 20 PS §1.5, which states that a widow's ". . . share in real estate aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in real estate of which the husband dies seised." It is argued that it is obvious here that an additional implied condition exists in this act, namely, that the real estate must have been aliened during coverture, in order to subject it to widow's rights. However, it is precisely because this condition is obvious that it may fairly be inferred; no other reasonable application of the statutory language would otherwise be possible. But the opposite is true in the case at hand, inasmuch as the condition urged is not obvious, is not needed to clarify any ambiguity in the statutory language and would depend for its validity upon making the title of the act more important than its words. I hold, therefore, that the election of Anne Laird Clephane encompasses and extends to that part of the trust corpus composed of settlor's share of

profits under his partnership agreement and the proceeds of his real estate.

A more complicated problem arises, however, in reference to the proceeds of settlor's life insurance policies. The problem created in this area by section 11 of the Estates Act first appeared in Brown Estate, 4 D. & C. 2d 722, affirmed per curiam by the Supreme Court at 384 Pa. 99, in which it was held that the statutory language was sufficiently broad to permit a surviving spouse to reach life insurance proceeds by her election. This ruling was promptly altered by the amendment of April 1, 1956, and also by the addition to the Estates Act of a new section 8, 20 PS §301.7a, which provided generally that "The designation of beneficiaries of life insurance shall not be considered testamentary, . . ." This rule was broadly applied to both direct beneficiaries and insurance trusts, and, if to the latter, whether or not they were funded or unfunded, revocable or irrevocable. The rule also applies regardless of who holds ownership or title to the insurance contracts themselves.

These rules were carefully and thoroughly discussed by the Supreme Court in Henderson Estate, 395 Pa. 215, which deals with a spouse's attempt to reach insurance proceeds payable both directly to beneficiaries and to a trust. Regarding the first problem, decedent owned two insurance policies issued in 1920 and 1926. In both, he retained the right to change beneficiaries. He took such action several times, but for the last time in 1952, naming his sister and a friend as beneficiaries. He died on November 9, 1957, leaving a will dated October 28, 1957. His spouse contended that the change of beneficiary in 1952 was a conveyance of assets within the meaning of section 11 of the Estates Act. She conceded that the 1956 amendment to the Estates Act would, if applicable, defeat her claim, but insisted that the change of beneficiaries in 1952 had resulted in the

creation of vested rights under the existing act which the subsequent enactments could not defeat. The Supreme Court held, however, page 226, that:

". . . the naming of a third party beneficiary in a life insurance policy — in the light of the history of the law of this Commonwealth with respect to life insurance which, as we have seen, is sui generis, and in the light of the statutory and public policy of our State to protect named third party beneficiaries — was not 'a conveyance of . . . assets' within the somewhat ambiguous language of section 11 of the Estates Act of 1947 . . ."

Henderson Estate, supra, as noted, also involved an inter vivos life insurance trust and is most pertinent in that respect to the present case. Its corpus was a policy on decedent's life purchased in 1926. The trust was created in 1952 and was amended for the final time in 1957, the amendment dividing the income between settlor's sister and friend, followed by remainder interests not necessary to detail here. The Supreme Court found that the creation of the trust of the policy was a conveyance of assets within section 11, and that, therefore, (page 228),

". . . the widow would have been entitled to one-half of this unfunded insurance trust under her election to take against her husband's will and against this conveyance, if no changes had been made by the above mentioned Legislative Acts of 1956 and 1957, and by the settlor himself in October 1957 . . ."

It thus is evident that Henderson Estate differs from the present case in one relevant respect only: There, the last alteration to the trust occurred after the 1956 statutory amendment, whereas here the trust was created in its final form prior to that time. It does not appear, however, that this difference would affect the result, since the court stated, page 228:

"The persons who were named by Henderson on October 28, 1957, as beneficiaries under the provisions of this insurance trust acquired whatever rights they had at that time. Since the trust was merely a revocable shell, they acquired only an expectancy. However, even under the Estates Act of 1947, Henderson's widow had no vested rights therein prior to his death. Whatever rights the widow might have therein arose only upon the death of the insured; and she then acquired only such rights as the Legislature chose to give her by statute, and these statutory rights could, as we have seen, be changed or modified or increased or destroyed by statute . . ."

It follows that the effective time of conveyance in trusts, such as the present one, is the date of death of the settlor and not the date of the creation or amendment of the trust. Wherever all of the elements of ownership of the corpus are retained by the settlor, together with the right to alter its beneficiaries, there can be no interest in anyone greater than an expectancy prior to settlor's death. Therefore, in the absence of any vested or permanent property interests, it is the law as it exists at settlor's death which rules, and not the law as it was at any other time.

This was the result reached by the Orphans' Court of Delaware County in Hunt Estate, 19 D. &C. 2d 356, 10 Fiduc. Rep. 33. This was a declaratory judgment proceeding, in which President Judge vanRoden considered the question now before me, and found that the principles announced in Henderson Estate made the date of the creation or amendment of a trust, such as the present one, irrelevant for the determination of widow's rights under sections 8 and 11 of the Estates Act. He said, page 368:

"It is unfortunate that the Supreme Court in *Henderson Estate* did not separate its findings and specifically hold that the decision would have been the same,

even though the amendment to the deed of trust was not made after the enactment of the Act of July 11, 1957, supra, in which case the instant proceeding would have been unnecessary. However, the court's opinion does serve to affirm the law applicable to decedents dying after the passage of the amendments . . ."

It might, of course, be contended that the delay in the vesting of rights in an unfunded trust until the death of the settlor results in the *trust*, irrespective of what might comprise its corpus, becoming a testamentary one and thus subject to a spouse's election. Any ambiguity in section 11, however, in this area was resolved by the adoption of the new section 8 referred to hereinbefore. As stated in the comment of the Joint State Government Commission appended thereto, "It has two purposes. The most important is to make it clear that unfunded insurance trusts are not testamentary and to that extent the law as stated in Brown Estate, 384 Pa. 99, is changed . . ."

I, therefore, decide that the election of Anne Laird Clephane does not extend to, or include, that portion of the corpus of this trust attributable to the proceeds of insurance policies on the life of settlor . . .