## Repici Estate

*Rames J. Bucci,* for Rose Repici, claimant.

*Norman C. Henss* and *J. Russell Gibbons,* for Jennie R. Repici, contra.

*John B. Day,* for City of Philadelphia, contra.

*David S. Molod,* for Commonwealth.

SILVERSTEIN, J., December 7, 1972.—The question presented by the petition and answer concerns the right of a surviving spouse to reach decedent's interest in the Pension Plan for Municipal Employes of the City of Philadelphia by an election to take against

inter vivos conveyances under section 11 of the Estates Act of 1947. Additionally, the petition alleges that decedent's sister, Rose Repici, removed certain unspecified assets belonging to decedent from a safe deposit box jointly owned by decedent and Rose Repici.

Decedent and Jennie R. Repici, the petitioner, were married on September 1, 1941. The marriage continued undissolved until decedent's death.

Anthony R. Repici died intestate on January 15, 1970. He had been employed by the City of Philadelphia for 38 years but had not elected a method of payment of benefits to him on retirement. On May 18, 1965, he had designated his sister, Rose Repici, as beneficiary upon his death. Decedent was eligible for retirement and could have changed the nomination of beneficiary at any time prior to his death.

On January 20, 1970, Jennie R. Repici (hereinafter referred to as Jennie) qualified as the administratrix of the estate of Anthony R. Repici. She filed an election under section 11 to take against all inter vivos transfers made by decedent. On May 6, 1970, Jennie filed a petition for citation directed to Rose Repici (hereinafter referred to as Rose) to show cause why petitioner could not elect to take against decedent's designation of Rose as beneficiary of decedent's pension plan with the City of Philadelphia, and further to show cause why Rose should not account to petitioner as personal representative of decedent's estate for the contents of safe deposit box B344 at The First Pennsylvania Banking and Trust Company.

At the hearing, Rose presented a claim in the amount of $1,551 for reimbursement of the funeral expense which she paid. Jennie claimed the family exemption and Rose objected to the same. The claims for funeral expenses and family exemption are treated in my adjudication of even date herewith.

The Philadelphia Board of Pensions and Retirement petitioned the court for leave to intervene as a party in interest, which was granted by decree of Shoyer, J., dated July 2, 1970.

Jennie's claim is based upon section 11 of the Estates Act of 1947 (now section 6111 of the Probate, Estates and Fiduciaries Code), which read, in pertinent part, at the time the election was filed, as follows:

"Section 11. Conveyances to defeat marital rights

"(a) In general. A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor. The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise."

The Board of Pensions and Retirement in its brief argues that the widow may not reach decedent's pension benefits by an election under the Estates Act of 1947. The board bases its argument upon article I, sec. 1-100, of the Philadelphia Home Rule Charter of April 21, 1949, which provides, in pertinent part:

". . . the City of Philadelphia . . . shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions . . . The City shall have the power to enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers; . . ."

The board argues that the Retirement System Ordinance enacted pursuant to the power granted in the Home Rule Charter is purely a matter of municipal concern because it deals with the administration and distribution of municipal funds to city employes. The city did not raise an objection to the jurisdiction of the court to pass on the matter or to make an order upon it.

The amendment of article XV, sec. I, of the State Constitution which authorized cities of the first class to adopt their own charters (the Home Rule Act) specifically provides in section 18, subtitle "Limitations," that "Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by the acts of General Assembly which are . . . (b) Applicable in every part of the Commonwealth . . ."

In support of the argument, the board cites Addison Case, 385 Pa. 48 (1956), wherein it was held that the civil service provisions of the Home Rule Charter would control the contrary provisions of an Act of the General Assembly.

The court in Addison found that "the administration of Philadelphia's civil service with reference to the removal or discharge of City employees is obviously not a matter of substantial State-wide interest but is one of purely local concern": Addison, supra, at 56.

In the instant case, a decision that the widow may exercise the rights given her in section 11 of the Estates Act does not, in any way, conflict with the right of the City of Philadelphia to pass ordinances governing designation by an employe of beneficiaries of his retirement benefits. Section 11 sets forth the right of spouses of any Pennsylvania decedent to elect against conveyances made to defeat their marital rights. Section 11 of the Estates Act clearly deals with a matter

of Statewide concern, the descent and distribution of property of decedents. The city could not object to an imposition by the Commonwealth of a tax upon wages paid to its employe on the basis that the remuneration of its employes is a matter of local concern only. Similarly, a finding that the designation of a beneficiary other than his spouse is a conveyance of assets in fraud of marital rights may not be objected to solely on the basis that the asset transferred consisted of benefits in a pension fund established pursuant to the Home Rule Charter.

The objection by the Board of Pensions and Retirement to the application of section 11 of the Estates Act to the City Employees' Retirement Fund is dismissed.

The question remains, however, as to whether the designation of his sister as beneficiary of the plan constitutes a transfer of assets in fraud of marital rights.

If decedent had died after November 27, 1970, the question as to whether a spouse's election is effective against a decedent's interest in a pension plan would be answered in the negative. The legislature by the Act of November 27, 1970, Act No. 260, amended section 8 of the Estates Act of 1947 (now section 6108 of the Probate, Estates and Fiduciaries Code) to provide that "the designation of beneficiaries of benefits payable upon or after the death of a participant under any pension, bonus, profit sharing, retirement annuity, or other employee benefit plan, shall not be considered testamentary." (It should be noted that this restriction was not carried over into section 11.) When the new Probate, Estates and Fiduciaries Code was enacted, section 11 of the Estates Act of 1947 (now section 6111 of the code) was amended to provide that the election given therein to spouses "shall not apply

to . . . employee death benefits described in section 6108 of this chapter, whether payable in trust or otherwise." The comment to section 6111 states:

"The phrase of the last sentence 'nor to employee benefits described in Section 6108 of this chapter whether payable in trust or otherwise' is added to insure understanding of the legislative clarification contained in the amendment of November 27, 1970 (Act No. 260) to section 8 of the Estates Act of 1947, now found in Section 6108, supra. The 1970 amendment expressly made benefits under annuity, endowment and employee benefit plans nontestamentary, Maley Estate, 21 Fiduc. Rep. 618 (1971) notwithstanding."

If the instant case arose under the law as now set forth in the sections referred to above, the widow would not be entitled to any share of the city employes' retirement benefits which are being paid to decedent's sister Rose.

The amendment to section 8 of the Estates Act is specifically made applicable to designations under employe benefit plans "made prior or subsequent to January 1, 1970, *by persons who die on or after said date,* and shall not be deemed to create any implication of invalidity of any such designation made by any person who dies before said date." (Italics supplied.)

By its terms, then, the amendment appears to be applicable to the instant case. If the amendment applies, an additional question concerning the effect of the amendment to section 8 upon the election under section 11 is raised. See Kraynok v. Kraynok Estate, 53 D. & C. 2d 163 (1971), where the court indicated its belief that the amendment to section 8 was intended only to overrule Brown Estate, 384 Pa. 99 (1956), concerning taxability of such a plan for Pennsylvania inheritance tax purposes. This interpretation conflicts with the language of section 6111 of the Probate, Es-

tates and Fiduciaries Code and the comment thereto. The additional question need not be reached, as I am of the opinion that the amendment may not be applied in this case.

Decedent died January 15, 1970. On May 6, 1970, Jennie Repici filed her election under section 11 of the Estates Act of 1947. Thereafter, the legislature passed Act No. 260 of November 27, 1970, amending section 8. As of May 6, 1970, Jennie had done all that the law required of her to perfect her election against transfers made in fraud of her marital rights. The only thing that remained to be done was to proceed to the determination and collection of the amount due under the election.

Counsel has not been able to cite a case nor has the court been able to find a case which holds directly that the legislature may not change the rights of a widow to elect against her husband's inter vivos transfers after her husband's death. Several cases have strongly stated such to be the case however. Henderson Estate, 395 Pa. 215 at 220 (1959): "The Legislature may create or modify or destroy a wife's statutory right to take against her husband's will during the life of the spouse, but not after the spouse's death: [citing] Crawford Estate, 362 Pa. 458 (1949); Melizet's Appeal, 17 Pa. 449 (1851); Moninger v. Rittner, 104 Pa. 298 (1883), Scaife v. McKee, 298 Pa. 33, 148 A. 37."

In Henderson Estate, the Supreme Court rejected the claim of a spouse to an elective share of certain policies of life insurance and an unfunded inter vivos insurance deed of trust, because her husband had died after the effective date of the amendments to sections 8 and 11 of the Estates Act, which provided that the designation of a beneficiary of an insurance policy was not testamentary and that the election provided in section 11 did not apply to the proceeds of life insurance

policies whether payable in trust or otherwise. The rationale of the court was that the wife had not acquired any rights under the Estates Act during her husband's life and, therefore, the rights might be changed at any time prior to her husband's death.

In McKean Estate, 366 Pa. 192 (1951), the court in holding that the Estates Act of 1947 was not intended to apply to transfers which took place prior to the effective date of the act said, at 195:

"While in some circumstances an Act of Assembly may be applied retrospectively where such intent is plain, such a result, however, is never permitted where vested interests are destroyed or affected: . . ."

In the instant case, the Act of Assembly amending section 8 of the Estates Act of 1947 purports to apply to estates of decedents who died prior to the time the act was adopted. In this case, the widow had already perfected her election and obtained whatever rights which the act, as then constituted, gave her. The legislature may not thus deprive the spouse of her rights: Crawford Estate, supra. I find as a matter of law that the amendment to section 8 of the Estates Act of 1947 contained in Act of Assembly No. 206, November 27, 1970, cannot be applied in the instant case to deprive the widow of her elective rights in her husband's pension plan.

It remains to determine the nature and extent of the elective rights granted to the surviving spouse by section 11 of the Estates Act of 1947 prior to the amendment.

Section 11 provides that the surviving spouse may treat as testamentary a "conveyance of assets" by which the conveyor retains "a power of revocation or consumption over the principal thereof."

Typical of the acts which have been held to be subject to the spouse's election under this section are the

opening of a joint bank account with a person other than the spouse (Hetrick Estate, 17 Fiduc. Rep. 317 (O. C. Dauphin, 1967)); the purchase of an annuity with a retained power of revocation and consumption (Fitzgerald Estate, 17 Fiduc. Rep. 324 (O. C. Alleg. 1967); and the creation of an unfunded insurance deed of trust (Brown Estate, 4 Pa. D. & C. 2d 722 (O. C. Westmoreland 1955), decided prior to the amendment excluding insurance policies from the operation of section 11 of the Estates Act; retention of an interest in real estate held jointly with others: O'Connell Estate, 16 Fiduc. Rep. 491 (O. C. Alleg. 1966). The result is the same if the conveyance is made prior or subsequent to the marriage of the decedent and the surviving spouse so long as the "conveyance" was made subsequent to the effective date of the Estates Act of 1947.

Several previous attempts by a surviving spouse to reach pension plan proceeds have met with mixed results. Snyder Estate (No. 2), 37 D. & C. 2d 260 (O. C. Phila. 1965), held decedent's designation of sister as beneficiary of public school employes retirement fund death benefit was irrevocable and that decedent had retained no power of consumption. In Snyder, Judge Bolger rejected a claim that the right to receive a portion of her previous contributions to the fund in each monthly payment constituted a power of consumption under section 11.

In Maley Estate, 21 Fiduc. Rep. 618 (O. C. Schuylkill 1971), the court was presented with an election by a spouse against the same public school employes retirement fund benefits. In Maley, decedent was still employed at the time of his death. The court found as a fact that decedent had the right at the time of his death to change the beneficiary designation. In Snyder, supra, decedent had retired and elected a form of pay-

ment under option 2 of the plan. The court in Maley held that decedent had retained a power of revocation over the fund and allowed the spouse's election. It was stipulated that decedent had accumulated benefits payable under the plan of $36,609.02 and that all contributions made by decedent except $292.85 were made after the effective date of the Estates Act. It was not stated what the total contributions of decedent were or whether the accumulated benefits included contributions made by the school board to the plan. The decree entered by the court provided that the election was allowed "against those benefits due decedent's beneficiary . . . to the extent that benefits are payable by reason of contributions made subsequent to January 1, 1948." The court found that the "decedent had a vested interest in the fund referred to in the above recited stipulation of facts. . . ."

In Blair Estate, 42 D. & C. 2d 223 (O. C. Erie, 1967), the court permitted the spouse's election, but only against the contributions made by the decedent since the effective date of the Estates Act of 1947. Decedent had enrolled in the pension plan in 1946. He designated his wife as beneficiary after his death. In 1949, he divorced his first wife and thereafter married the claimant. Decedent died in 1966 prior to his retirement. Under the provisions of the plan, the company withheld a percentage of the decedent's salary and made contributions of its own to the pension fund. Decedent could not make withdrawals from the fund prior to his retirement except in case of his terminating his employment. He had the right to designate beneficiaries in the event of his death and to change the beneficiary designation at any time. The court held that each payment by decedent into the plan was a conveyance within the meaning of section 11 and that decedent possessed the power to consume within the

meaning of the section even though he had not retired and would have to do so or leave his employment in order to obtain any of the funds paid in by him. The court further held that because decedent had not yet retired only his contributions and not the contributions of the company were involved. The election of the second wife was allowed as to the value of the contributions made by decedent subsequent to the effective date of the Estates Act of 1947.

At the time of his death, Anthony R. Repici was employed by the City of Philadelphia. He was eligible for retirement but had not yet retired nor had he elected a method of payment of benefits to him on retirement. He had nominated his sister, Rose Repici, as the beneficiary of the plan at his death. It was agreed that he could have changed the beneficiary designation at any time prior to his death. Under the city pension plan, he had paid in a total of $5,703.97. No indication was given as to value of contributions made prior to January 1, 1948, the effective date of the Estates Act of 1947. At Anthony Repici's death, his sister, Rose, could have elected to receive a lump sum or payments on a monthly basis. She chose the latter. In order to receive the benefits on a monthly basis, Rose Repici had to advance the sum of $913.57.

The question then arises as to what act or acts of decedent constituted the "conveyance" under section 11. Section 301(2) of the Estates Act defines conveyance as "an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation." The definition then excludes for purposes of section 11 the excercise of a power of appointment.

In the case of the opening of a joint bank account as in Hetrick Estate, supra, the act of opening the account and depositing funds therein is the conveyance.

When a spouse establishes a joint bank account with right of survivorship with another person, he retains the right to withdraw or consume only one-half of the account during his life. The courts have held that the election of the spouse of the transferor is effective only against that portion over which he retained the right of revocation or one-half.

In Blair Estate, supra, the court held that each payment into the fund was a conveyance under the meaning of the act and restricted the election to decedent's contributions. Accordingly, the court permitted the spouse's election as to "one-half of all sums paid into its pension fund account by decedent, Merl Blair, since December 31, 1947, together with all interest accrued on said funds."

In Maley Estate, supra, the court found that decedent had a vested interest in the benefits which were stated to be valued at over $36,000. The court allowed the election as to all benefits "payable by reason of contributions made subsequent to January 1, 1948." It would appear that the election was permitted as to all benefits payable and not just to the portion attributable to decedent's contributions or to the value of accumulated contributions at date of death.

The section (section 11, Estates Act, section 6111 Probate, Estates and Fiduciaries Code), specifically provides that the election is effective "to the extent to which the power has been reserved."

Under the 1967 Municipal Division Revised Plan 60(j), six percent of the employe's wages are withheld and placed in the pension plan. The city places six and one-half percent in the plan. If the employe leaves the city before reaching retirement age, he has the option of leaving his accumulated contributions with the city if he has worked for more than 10 years for the city. He will then receive a pension at retirement age

based on his earnings and service. If he has worked less than 10 years, he is only entitled to receive his contributions. In no event does the employe obtain any of the city's contributions except upon retirement. In the event that the employe dies before retiring, the employe has the right to name a beneficiary and the beneficiary has the option of (1) receiving either the sum of the employe's contributions, augmented by a sum up to one year's compensation depending upon the employe's years of service, reduced by the amount of gross life insurance payable; or (2) an annual pension equal to the amount the beneficiary would have received if the employe had retired on the day prior to his death and had elected a reduced pension benefit payable to him for life and then to the named beneficiary for life. In Mr. Repici's case, the beneficiary would have gotten a refund of $5,703.96, and one year's compensation of $7,703.00, under option (1).

However, Anthony Repici had reached retirement age at the time of his death but had not elected any retirement plan. On May 18, 1965, he had designated Rose Repici, his sister, the beneficiary at his death. It appears that on May 22, 1967, Mr. Repici transferred to the 60(j) plan. Mr. Repici had not made sufficient contributions to the plan to fully fund his portion of the (j) plan and was making payments to bring the plan current up to the time of his death. This is confirmed by the fact that Rose had to pay $913.57 in order to take the pension offered by the plan.

Anthony Repici, having reached retirement age, had a vested right to receive a pension of $7,926 per year for life even though he had only paid a total of $5,703.96 into the plan. By reason of his being so qualified, his beneficiary is entitled to receive payments of $5,944.56 per year for life. Both Mr. Repici's pension and Rose Repici's were conditioned upon their paying

an additional $913.57 to the plan. He retained the right to revoke in toto the benefits conferred by his designation. He conveyed a right in benefits which he himself had at the time of his death. Thus, Anthony Repici "conveyed" to Rose Repici the right to receive the benefits to which she is now entitled. Clearly, the value of the conveyance in this case was more than just the accumulated contributions.

I find as a matter of fact and law that the "conveyance" made by Anthony Repici to his sister, Rose Repici, of the benefits which Rose is now entitled to receive, less an adjustment for the payment of $913.57 which she made in order to fully fund the plan, is subject to the election of Jennie Repici under section 11(b) of the Estates Act of 1947. It appears that Anthony Repici was survived by two sons. Accordingly, Jennie Repici is entitled to one-third of the benefits payable to Rose Repici, less an adjustment to reflect Rose's payment of $913.57.

With respect to Jennie Repici's claim to estate assets allegedly removed from decedent's safe deposit box, the burden of proof rests with claimant: Cutler's Estate, 225 Pa. 167 (1909). The degree of proof to show that assets belonging to decedent are in the possession of another cannot be supplied by mere speculation or conjecture.

Rose Repici testified that as the result of a conversation with Jennie Repici concerning the possible existence of life insurance policies, she examined the safe deposit box held jointly by herself and decedent. She stated that she did not find any cash belonging to decedent in the box. Mrs. Ann Fulginiti, decedent's sister, testified that she accompanied Rose Repici to the bank on the day the box was entered. She stated she was there when the box was opened. The only items in the box were a deed to the house, a certificate

of title to an automobile and some empty brown envelopes.

The record fails to disclose any reasonable basis for finding that the box contained any assets of decedent other than the deed to the house and title to an automobile. Accordingly, I find as a fact that there were no other assets in the box. The claim of Jennie Repici for an accounting from Rose Repici is dismissed.

Accordingly, I enter the following

## DECREE

And now, December 7, 1972, it is ordered, adjudged and decreed that Jennie R. Repici, surviving wife of Anthony R. Repici, deceased, is entitled to take against the benefits payable to Rose Repici from the Board of Pensions and Retirement of the City of Philadelphia to the extent of one-third thereof, less an adjustment for the $913.57 paid into the plan by Rose Repici.