Behan Estate.

Argued October 6, 1959. Before Jones, C. J., Bell, Jones, Cohen, Bok and McBride, JJ.

reargument re-fused May 12, 1960.

*Samuel L. Goldstein,* with him *Suto, Power, Goldstein & Walsh,* for Esther H. Behan, widow, and co-executrix and co-trustee of estate of decedent.

*John C. Bane, Jr.,* with him *Bernard J. Hampsey, John H. Scott, Jr.,* and *Reed, Smith, Shaw & McClay,* for Agnes Fox and Commonwealth Trust Company of Pittsburgh, trustees, and Agnes Fox and Fidelity Trust Company, trustees.

*Ralph S. Snyder,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for Attorney General, appellant.

OPINION BY MR. JUSTICE BELL, March 22, 1960:

Four appeals involving various and highly technical points, were presented and argued together in this Court. Without discussing some of the technical questions raised, we shall decide the basic questions, in which all parties are interested, on their merits.

Richard J. Behan on December 29, 1949, made a valid inter vivos trust agreement with Potter Bank & Trust Company, with active duties imposed upon the trustee, which was duly amended on December 31, 1952. Under the terms of the amended trust agreement the income of the trust was payable to Miss Agnes Fox,

Behan's secretary, for her life, and if the income was not sufficient it was to be supplemented by a payment out of principal to reach a certain minimum annual allowance. Upon the death of Agnes Fox *"The principal remaining*** in the hands of the trustee shall be paid over . . . to such charitable trust or foundation as shall be hereafter established by the terms of the last *will* . . . of the donor . . ."* The amended trust by its terms was irrevocable, and the settlor reserved no power of dominion or appointment except as hereinbefore set forth.

Behan died on October 8, 1956, leaving a will in which he provided that all his residuary estate was to be given to the "Behan-O'Donnell Charitable Foundation" for the purpose of establishing a convalescent home and for other charitable purposes. The trust principal was approximately $63,000; the testamentary estate was approximately $420,000.

Behan's widow filed her election to take against her husband's will pursuant to Section 8 of the Wills Act of 1947, and also filed her election to take against the provisions of the aforesaid inter vivos trust pursuant to Section 11 of the Estates Act of 1947.**

The lower court erroneously decided that the life tenant Agnes Fox was entitled to income plus sufficient principal*** to reach a certain minimum annual allowance, but correctly said: "Section 11 of the Estates Act of 1947 gives the widow the right to elect to take against a conveyance of assets by a person who retains a power of appointment by will. . . .

"The distribution of the corpus of the trust is improper at this time since the life tenant is entitled to the entire income from the entire corpus."

---

* Italics throughout, ours.
** Effective January 1, 1948, P. L. 100, 107.
*** I e., payable from the *entire* trust.

The real difficulty in this case arises from the fact that Section 11 of the Estates Act is not free from ambiguity.

In *McGuigen Estate*, 388 Pa. 475, 482, 131 A. 2d 124, the Court said: "In Martin Estate, 365 Pa., supra, the Court said (page 283) : 'When an act is changed or repealed and a new or similar act enacted to take its place, or when the words or meaning of a statute are not explicit or clear, the intention of the legislature is to be gathered not only by a consideration of the new act but also by examining the occasion, reason or necessity for the law; the circumstances under which it was enacted; the mischief, if any, to be remedied; the object to be obtained; and the old law upon the subject: Phipps v. Kirk, 333 Pa. 478, 5 A. 2d 143; *Orlosky v. Haskell*, 304 Pa. 57, 66, 155 A. 112.

" 'Moreover, in ascertaining the legislative meaning, while what is said in debate is not relevant, the report of a legislative commission or a Senate or House committee may, if obscurity or ambiguity exists, be considered: National Transit Company v. Boardman, 328 Pa. 450, 197 A. 239; Tarlo's Estate, 315 Pa. 321, 172 A. 139.' " See also to the same effect: *Henderson Estate*, 395 Pa. 215, 224, 149 A. 2d 892.

If the words of a law are not clear and free from all ambiguity "[the] presumption in ascertaining [the] legislative intent [is] that the legislature does not intend a result that is absurd . . . or unreasonable." Statutory Construction Act of May 28, 1937, P. L. 1019, §52.

To aid in determining the intent of the legislature as set forth in Section 11, we approach a consideration of Section 11 by examining the old law upon the subject, the reason for the new law, and the mischief it sought to remedy.

The law prior to January 1, 1948 was clearly settled that a husband could lawfully dispose of his per-

sonal property free from post mortem claims by his widow (1) by an absolute gift or (2) by an irrevocable inter vivos trust in which he reserved for himself or created for another a life estate with remainder to a named person or a named charity, or (3) by an active revocable inter vivos trust in which he reserved to himself, or gave to another, the income for life, with a gift of the remainder to a named person (or persons) or to a named charity (or charities) provided he divested himself at the time of the creation of the trust of the ownership and control of the property (a) except for an *unexercised* power to revoke or modify in whole or in part. The obvious effect of each of such gifts or trusts is to defeat the wife's rights in such property which she would acquire at her husband's death if he were still the absolute owner thereof. The law holds that such gifts of personalty are not testamentary in character and that the ultimate principal beneficiaries under the trust instrument acquired a vested interest in the remainder at the time of the creation of the trust; and an election by the wife to take against her husband's will would give her no rights in the income or principal of the gifts or trusts above mentioned.* *McKean Estate*, 366 Pa. 192, 77 A. 2d 447; *Mason Estate*, 395 Pa. 485, 150 A. 2d 542, and numerous cases cited therein; *Windolph v. Girard Trust Co.*, 245 Pa. 349, 91 A. 634; *Shapley Trust*, 353 Pa. 499, 46 A. 2d 227; *Henderson Estate*, 395 Pa. 215, 149 A. 2d 892.

This was the pre-1948 law. The mischief to be remedied and the reason for the new law are clear. Wives were being very unfairly deprived of a share in their husband's personal property by a transparent trust de-

---

* No case has been called to our attention and we have discovered none which specifically ruled (prior to 1948) as to a widow's rights in an irrevocable trust which provided for income to a life tenant with consumption of principal amounting to an annuity and a power of testamentary appointment by settlor.

vice which permitted a husband to retain control of his property, and at the same time legally deprive his wife of her just marital rights therein. The legislature in and by Section 11 of the Estates Act of 1947 remedied this gross injustice by providing that *so far as a surviving electing wife was concerned,* a conveyance of property by a husband was testamentary to the extent that he retained dominion and control over the conveyed property by a power of revocation, or consumption, or appointment by will, subject only to the rights of a "defined" income beneficiary.

Section 11 of the Estates Act of 1947 gave a surviving electing wife certain rights with respect to property which had at one time belonged to her husband, and to this extent changed and modified the well settled law of Pennsylvania. Section 11 provides: "Powers of Appointment; Rights of Surviving Spouse.—A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor." The word "conveyance" is defined in Section 1 (2) of the Act as follows: " 'Conveyance means an Act by which it is intended to create an interest in real or personal property, whether the act is intended to have inter vivos or testamentary operation.' "*

---

\* Subsequent amendments of February 17, 1956 and of July 11, 1957 excluded life insurance policies and insurance trusts, funded and unfunded, from the provisions of Section 11. *Henderson Estate,* 395 Pa. 215, 149 A. 2d 892.

Behan's trust agreement was undoubtedly a "conveyance of assets," and the settlor retained a limited or special power of appointment, i.e.; the power to appoint the remaining principal to such charitable trust or foundation as shall be established by the settlor's last will. The trust agreement did not constitute or amount to a mere agency or an illusory conveyance which would have made it testamentary in character and invalid as to dispositions intended to take effect after death. See *Pengelly Estate*, 374 Pa. 358, 97 A. 2d 844. This trust agreement created an active irrevocable trust as to which settlor reserved a special power of appointment by will.

It would seem strange, and certainly contrary to the reasons for and the intent and language of the Act, if a husband could avoid the Act and defeat his wife's marital rights by reserving to himself a *special* testamentary power of appointment (to appoint to a special class of relatives or charities or friends) as distinguished from a general power of appointment. If there be any doubt on this point it would be removed and resolved by the comment of the Joint State Government Commission. The Commission's comments are as follows:

"Comment—Act of 1947—This section preserves for the surviving spouse the right to share in the decedent's assets where the decedent has retained important rights of ownership at death. Rights of the surviving spouse in such circumstances have been recognized in other states: cf. Newman v. Dore, 275 N. Y. 371, annot. 12 Temple L. Q. 129, 36 Mich. L. R. 496. However, Pennsylvania has given little opportunity to the surviving spouse to share when legal title has passed from the decedent prior to death: cf. Beirne v. Continental-Equitable T. & T. Co., 307 Pa. 570; Windolph v. Girard Trust Co., 245 Pa. 349; Rynier Est., 347 Pa. 471; contra Diedel's Est., 32 D. & C. 685. Indeed, the situation

in Pennsylvania has been such that it was stated correctly that *'It is only the stupid husband, who, against his wishes, would be forced to allow his wife to share in his personalty.'*: Comment (1939) 5 Univ. of Pitts. L. Rev., 78, p. 87.

"Section 11, in respect to powers of appointment completes the plan suggested by section 8 (c) of the Wills Act of 1947. The surviving spouse will have *the right to reach assets of a trust* created by the decedent where power of appointment is retained by the decedent, but not where the trust was created by another.

" 'Power of appointment' and not 'general power of appointment' is employed *so that this section can not be avoided by creating special powers* giving the right to appoint to a class including everyone but the spouse or some other designated individuals."

It is clear that Section 11 was passed to prevent a husband, intentionally or otherwise, from defrauding his surviving wife of her marital rights by an inter vivos trust which contained a power of revocation or consumption or a power of general or special appointment by will. For centuries the law has sought to protect a wife and preserve for her some share in her husband's property—the ancient right of dower, and more recently intestate Acts and Wills Acts. Pennsylvania has been a laggard in this field. However, in the field of Wills, Trusts and Decedents' Estates, a wife's rights have always been recognized as higher than rights of children, or relatives or friends or charities or legatees.

Section 11 provides as we have seen that such "a conveyance of assets shall be treated as a testamentary disposition so far as the surviving spouse is concerned to the *extent* to which the power has been reserved . . . ."

It has been contended that the word "extent" (1) limits the rights of a surviving wife to merely appoint *to the charitable class* to which the settlor-testator could appoint. The surviving wife contends, on the

other hand, that this conveyance of her husband's assets was (a) illusory and (b) testamentary, and for each of these reasons absolutely void as to her; but if not absolutely void, her election gave her a one-half interest in the corpus of the trust as it existed at settlor's death, *and payable to her now,* subject to the right of the income to Agnes Fox for her life. An analysis of *all* the language of Section 11 and the Commission's "Comments" thereon, as well as the reason for the Act, negate each of these contentions.

With respect to the "limited appointment to charities" contention, it is clear that the Legislature intended to give the electing wife her marital rights in the corpus of those assets in which the settlor had reserved a power of (revocation or consumption or) appointment by will, subject only to the rights of a *defined income* beneficiary. Limiting the wife's right merely to appoint to one of a limited class selected by settlor-testator would nullify the reason for the remedial Act and would make a mockery of the legislative intent to prevent a husband defrauding his wife of all or a part of his personal property by (what is generally called) an active inter vivos trust. Such an interpretation would leave her, *in reality,* no better off than she was prior to the Estates Act of 1947—in many cases, penniless. She could appropriately say "The mountain laboured and brought forth a mouse."

It is clear—considering Behan's trust agreement and will, in conjunction with Section 11 of the Estates Act of 1947, and the reason for and the intent of said Act, as well as the comments of the Joint State Government Commission—that the widow's election to take against her husband's conveyance of assets by the above-mentioned trust agreements gave her a one-half interest in the principal of the trust remaining unconsumed at his death, subject only to the income payable from the entire trust to Agnes Fox for her life, even

though Behan had reserved in the trust agreement a special power to appoint the principal remaining at the death of Agnes Fox, to a charitable foundation to be named in his will.

It is clear as crystal that the charity which was to be named in the settlor's will as the ultimate donee of the principal of his inter vivos trust did *not* acquire a *vested* interest therein at the creation of the trust. No case has ever held that such a gift was vested.

*Windolph .Trust,* 374 Pa. 81, 97 A. 2d 67, which is chiefly relied upon by the Charitable Foundation, did not involve a question of whether the gift to a charity to be appointed in and by a donee's will was vested or contingent. The Court's opinion will be searched in vain for the use of the word "vested", or for any discussion of whether the gift to the charities was vested. That case involved three questions: (1) Was a special power of appointment which was given by a donor who was domiciled in Pennsylvania to a donee who was domiciled in California governed, if and when exercised by the donee, by the law of California or by the law of Pennsylvania? (2) Did the donee have a power to appoint that particular estate and if so, did he validly execute the power? (3) If the power was not validly exercised, should the estate of the donor over which the donee mistakenly thought he had a power of appointment, be awarded under the doctrine of cy pres to three educational institutions or to four? . .

The question of whether that gift was vested or even whether it was testamentary, was, we repeat, not raised or involved.

Other cases relied upon by the Foundation, which sustained charitable gifts, are clearly distinguishable for each of two reasons—(1) The Court merely decided in such cases that the settlor's or testator's charitable intent was clear and the doctrine of cy pres was applicable, and did not permit a clearly intended charitable

gift to fail (a) for indefiniteness or vagueness of the named object, or (b) inability or incapacity to carry out exactly the charitable purposes specifically set forth, or (c) because of the death or incapacity of a trustee. (2) Even more important, such cases are clearly distinguishable *because no right of a surviving spouse under Section 11* of the Estates Act was involved or decided therein.

The decree as modified is affirmed. The record is remanded to the Orphans' Court with directions to enter an appropriate decree in accordance with this opinion; the parties to pay their respective costs.