Huested Estate.

Argued October 6, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Richard F. Geiselhart,* for executor.

*Thomas D. Thomson,* with him *John David Rhodes,* and *Pringle, Bredin & Martin,* for widow.

*Emily H. Wilson* and *W. Bruce McCrory,* for trustee.

OPINION BY MR. JUSTICE BELL, March 23, 1961:

Were settlor's amendments made after 1948 to his inter vivos trust indenture created in 1940 voidable as to his widow?

On January 15, 1940, Nevin N. Huested and the Fidelity Trust Company executed a trust indenture which reserved to the settlor the right to amend and to revoke the trust in whole or in part. The assets of the trust consisted of stocks and bonds which had a market value at his death of approximately $450,-000. Under the terms of this (original) indenture the trustee was to pay the income from the trust to Mr. Huested during his lifetime. Upon his death the trustee was to hold $35,000 of the assets for his widow, Louise S. Huested, and to pay her $100 a month for her life from the principal and income. The remain-

der of the income from this fund was to be paid to the settlor's son, Nevin N. Huested, Jr.,* for his life. In the event his son died before the settlor's widow, the entire income from this fund was to be paid to her. Upon the widow's death the principal of the fund then remaining, less two small contingent legacies,** was to be paid to his son, or in the event he predeceased the widow, then as he appointed by will, or if he failed to appoint, then it was to pass in accordance with the intestate laws of Pennsylvania. The settlor reserved the power during his lifetime and also by will to add additional amounts to the trust as well as the power to direct the trustee in the investment of the assets. Contrary to the contentions of the widow these two powers are not equivalent to a power to control the trust and make it a mere agency account where as here the trust was an active one, i.e., the trustee had active duties to perform.

Thereafter the dispositive provisions of the trust indenture were amended on five separate occasions, August 22, 1940, October 9, 1944, September 4, 1946, August 24, 1951, and August 16, 1956. On each occasion the settlor, although he did not expressly revoke the dispositive provisions of the original trust indenture or its supplements, entirely rewrote all the dispositive provisions. Briefly summarized, the changes made by each supplement are as follows:

By the (first) supplement*** in 1940 a sum of $35,-000 was specifically set aside for the settlor's son, and

---

* Nevin N. Huested, Jr. was the decedent's son by a previous marriage. There were no children of the marriage between Nevin H. Huested and Louise S. Huested.

** The settlor also provided for the payment at his death of $10,000 and $5,000, respectively, out of the principal to his sister, Gertrude R. Helmick, and his niece, Marguerite Helmick, should either or both survive him.

*** Each amendment was termed a supplement.

the widow's fund was changed to $35,000 or 35%, whichever should be less. Likewise, his sister's share was changed to $10,000 or 10%, whichever should be less, and his niece's share to $5,000 or 5%, whichever should be less.

By the (second) supplement in 1944, his son's share was fixed at $35,000 or 35%, whichever may be less. His sister's share was increased to the lesser of $20,000 or 20% of the trust estate; out of the income and/or principal set apart for her she was to receive $50 a month for life with any surplus of income to be paid to his son if living. His niece was omitted altogether.

The (third) supplement in 1946 increased the income to be paid to his widow to $150 a month.

The (fourth) supplement in 1951 again increased his widow's monthly allowance to $200 and his sister's allowance to $100 a month.

The (fifth and last) supplement in 1956 again increased his widow's monthly allowance, this time to $300 and omitted his sister entirely. A new provision giving small amounts of income and/or principal to minor beneficiaries was added.

The increased gifts to his widow which he made in 1946, 1951 and 1956 were made at the expense of his son.

Since January 1, 1948, the settlor withdrew $17,081.40 in cash and $3,103.25 in other assets from the trust fund, and during the same period added $56,247.72 to the trust—in each case without any written instrument to signify any change or modification of the trust.*

---

* "Article VIII The Donor shall have the right to amend the provisions of this agreement and to revoke the trust hereby created, in whole or in part, by delivering to the Trustee during his lifetime, a signed instrument setting forth the amendment or revocation."

Contemporaneously with the execution of the trust indenture, the settlor executed his will, leaving his estate in equal shares to his son, Nevin, and his widow, Louise. Virtually all of his assets had been from time to time transferred by him into and made a part of the aforesaid inter vivos trust.

Nevin N. Huested, Jr., settlor's son, died on April 29, 1959, unmarried and without issue. He left his entire estate to Minnesota charities. Settlor's widow, Louise S. Huested, is the only surviving member of his immediate family.

Louise S. Huested duly filed an election to take her widow's statutory share of Huested's assets, including those held by the trustee. Following the audit of the trustee's account, the Orphans' Court held that the 1951 and 1956 supplements to the 1940 indenture of Trust were "conveyances" within the meaning of §§1(2) and 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §§301.1(2) and 301.11, and allowed the widow to take her intestate share of the trust assets. The executor of the estate of Nevin S. Huested, Jr., filed exceptions to this Decree and upon the dismissal of his exceptions took this appeal. Settlor's widow also appealed (probably as a precautionary and protective measure) from the rulings of the Court below which rejected her offers to show that the trust was a mere agency account, illusory and testamentary because of control over investments* and over the administration of the trust itself allegedly exercised by the settlor.

---

* The trust indenture pertinently states: "Article III . . . (a) . . . However, during the lifetime of the Donor the Trustee shall follow any investment directions which may be given by him. . . ."

### Nature of the Trust

The settlor created in 1940 an inter vivos trust, reserving to himself, we repeat, the power to revoke and/or amend it in whole or in part. The trustee was given active duties to perform.

"The law of Pennsylvania is well and clearly settled [except as to certain rights of a widow created by the Estates Act of 1947—see infra] that a deed of trust or trust agreement made by a solvent settlor, which creates a present interest in the beneficiaries of the trust and gives to the trustee active duties, is a valid inter vivos trust and is not testamentary in character even though the donor reserved a life estate to himself, together with a power to alter, revoke or amend the trust in whole or in part. Moreover, the fact that the interest of the remaindermen does not take effect in possession or enjoyment until the death of the settlor will not make the trust testamentary in character or null and void: [Citing numerous cases]": *Mason Estate*, 395 Pa. 485, 488, 150 A. 2d 542. Accord: *Behan Estate*, 399 Pa. 314, 160 A. 2d 209; Restatement, Trusts, §57(1) (1935); Restatement (2d), Trusts, §57 (1959); Scott on Trusts, §57.1.

In *Behan Estate*, supra, we considered Section 8, Section 1(2) and particularly Section 11 of the Estates Act of 1947 and decided that *an amendment* dated December 31, 1952 to a prior inter vivos trust agreement—which by the terms of the amendment was irrevocable and which reserved to the settlor a power to appoint to charities by his will the principal remaining in the hands of the trustee upon the death of the life tenant (settlor's secretary)—*was testamentary as to the widow*, even though settlor retained only (as above indicated) a limited or special power of testamentary appointment. We there said: ". . . The

obvious effect of each of such [inter vivos] gifts or trusts is to defeat the wife's rights in such property which she would acquire at her husband's death if he were still the absolute owner thereof. The law holds that such gifts of personalty are not testamentary in character and that the ultimate principal beneficiaries under the trust instrument acquired a vested interest in the remainder at the time of the creation of the trust; and an election by the wife to take against her husband's will would give her no rights in the income or principal of the gifts or trusts above mentioned. McKean Estate, 366 Pa. 192, 77 A. 2d 447; Mason Estate, 395 Pa. 485, 150 A. 2d 542, and numerous cases cited therein; Windolph v. Girard Trust Co., 245 Pa. 349, 91 A. 634; Shapley Trust, 353 Pa. 499, 46 A. 2d 227; Henderson Estate, 395 Pa. 215, 149 A. 2d 892.

"This was the pre-1948 law. The mischief to be remedied and the reason for the new law are clear. Wives were being very unfairly deprived of a share in their husband's personal property by a transparent trust device which permitted a husband to retain control of his property, and at the same time legally deprive his wife of her just marital rights therein. The legislature in and by Section 11 of the Estates Act of 1947 remedied this gross injustice by providing that so far as a surviving electing wife was concerned, a conveyance of property by a husband was testamentary to the extent that he retained dominion and control over the conveyed property by a power of revocation, or consumption, or appointment by will, subject only to the rights of a 'defined' income beneficiary.

". . . The word 'conveyance' is defined in Section 1(2) of the Act as follows: ' "Conveyance means an Act by which it is intended to create an interest in real or personal property, whether the act is intended to have inter vivos or testamentary operation." '"

*Behan Estate* and *Henderson Estate* in principle rule the instant case. If the language of a remedial act is ambiguous it must be liberally construed, and if two interpretations are reasonably possible or there is reasonable doubt as to its applicability or inapplicability to particular facts, the interpretation and application which favors the ("surviving spouse," in this case) widow must be adopted. Cf. *Henderson Estate,* 395 Pa. 215, 149 A. 2d 892; *Behan Estate,* 399 Pa.; supra; *Brown Estate,* 384 Pa. 99, 119 A. 2d 513.

Each time the settlor executed an amendment or supplement after 1947 to his 1940 trust indenture, (a) the scheme of distribution as to the named beneficiaries was changed and (b) the amount or interest given to each beneficiary was substantially changed and (c) *the settlor completely restated the entire dispositive provisions,* so that each amendment or supplement constituted a new and complete disposition of the trust assets. Moreover, while the settlor did not state in each or any supplement that the dispositive provisions in the original trust deed were revoked, that was clearly his intent, and the necessary, actual and legal effect of each succeeding supplement was to revoke the dispositive provisions of the prior supplement and create at that time new dispositive interests or gifts.

We therefore hold that the amendments of 1951 and of 1956 were clearly "conveyances of assets" within both the language and the spirit of the Estates Act of 1947 and consequently each was "a testamentary disposition [of Mr. Huested's property or estate] so far as the surviving spouse is concerned" and voidable at her election. The fact that his widow could not have set aside the trust indenture of 1940 if it had not been amended after 1947, is irrelevant; and the fact that the share of his widow was increased instead of being decreased by the amendments of 1951 and

1956 cannot operate to nullify or defeat her right of election to take her statutory interest in this property.*

Decree affirmed; costs to be equally divided.

---

* Settlor's widow attempted to prove that the trust was a mere agency account, illusory and therefore testamentary, by offering in evidence certain correspondence between the settlor and the trustee and certain inter office memoranda. This offer was rejected by the hearing Judge. For reasons hereinabove appearing, it is unnecessary to pass upon this question.