## Fessler Estate

*Charles Bidelspacher, Jr.,* for exceptant.

*Furst, McCormick, Muir, Lynn & Reeder,* and *Greevy, Knittle, Fisher & Rice,* contra.

GREEVY, J., October 10, 1961.—The facts in this case are not in dispute. During her lifetime, Lettie E.

Fessler, deceased, accumulated 653.326 shares of Investors Mutual, Inc., which shares, by an instrument which is labeled "Declaration of Trust—Revocable", were to go, at her death, to E. Lee Fogleman, the exceptant hereto. The said declaration of trust was made August 2, 1950. On March 19, 1958, decedent made a will with codicil thereto dated May 8, 1958.

Lettie E. Fessler died June 28, 1959. The executors of her estate inventoried said shares as assets of the estate, and E. Lee Fogleman filed exceptions to the inventory. The matter is now before us, to dispose of the question of the ownership of said shares.

This court has exclusive jurisdiction of adjudicating title to personal property in the possession of a personal representative, or registered in the name of a decedent. Orphans' Court Act of August 10, 1951, P. L. 1163, art. 3, sec. 301, as amended 20 PS §2080.301 (13).

Concerning the practice of filing exceptions to an inventory, the Supreme Court, in Rogers Estate, 379 Pa. 494, pp. 495 and 496, stated:

"In the settlement of a decedent's estate disputed title to property should not be determined upon exceptions to an inventory and appraisement which happens not to include the property claimed on behalf of the estate. The function and object of an inventory and appraisement in a decedent's estate is to fix *presumptively* the existence of property in the possession of the fiduciary and the value thereof. This is only *prima facie* evidence of ownership and value. Such listing does not affect the true ownership and value. . . . The question of ownership is of interest to creditors, federal and state taxing authorities, and others. Such title, therefore, should not be finally determined until after an audit, with due statutory notice, and the determination by the orphans' court whether or not a substantial issue of fact exists."

In Higbee v. Koziol, 383 Pa. 116, 118 (1955), the court stated:

". . . Disputed title to property in connection with the settlement of a decedent's estate should never be determined upon exceptions to an inventory and appraisement, or upon a petition for a supplemental inventory."

However, the Fiduciaries Act of April 18, 1949, P. L. 512, was amended in 1956, to provide a ready procedure for objections to an inventory. Section 405 has been added and provides (art. 4, sec. 405, added February 23, 1956, P. L. (1955) 1084, sec. 3, 20 PS §320.405):

"Objections to the inventory may be made by any party in interest at any time up to and including the time fixed by rule of court for making objections to the first account of the personal representative. Such objections in the discretion of the court may be heard at the audit of the account. Objections to the inventory also may be made in the form of objections to the account."

This amendment, in effect, repeals the law laid down in Rogers Estate, supra, and in Higbee v. Koziol, supra.

Due notice of this proceeding and an opportunity to appear and be heard was given to all residuary heirs. This court has jurisdiction and the procedure is proper. In the discretion of this court, it is in the best interest of all parties that the determination be now made.

The question to be decided is the ownership of the Investors Mutual, Inc., shares. If the instrument is an inter vivos trust, then the shares belong to the exceptant. If the instrument is a testamentary trust, then the further question arises as to whether or not the trust was revoked by decedent's last will.

"The law of Pennsylvania is well and clearly settled that a deed of trust or trust agreement made by a solvent settlor, which creates a present interest in the beneficiaries of the trust and gives to the trustee active duties, is a valid inter vivos trust and is not testamentary in character even though the donor reserved a life estate to himself, together with a power to alter, revoke or amend the trust in whole or in part. Moreover, the fact that the interest of the remaindermen does not take effect in possession or enjoyment until the death of the settlor will not make the trust testamentary in character or null and void: (Citing numerous cases)": Mason Estate, 395 Pa. 485, 488, 150 A. 2d 542. Accord: Behan Estate, 399 Pa. 314, 160 A. 2d 209; Restatement of Trusts, §57(1) (1935); Restatement of Trusts, 2d 57(1) (1959); Scott on Trusts, §57.1, Huested Estate, 403 Pa. 185, 190.

Comment "h" under Restatement of Trusts 2d, §57, sets forth:

"The rule stated in this Section is applicable not only where the owner of a property transfers it to another as trustee, but also where he declares himself trustee of the property. The disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor-trustee reserves a beneficial life interest and power to revoke and modify the trust. The fact that as trustee he controls the administration of the trust does not invalidate it."

"A trust is not testamentary merely because the settlor reserves a beneficial life interest and in addition a power to revoke the trust in whole or in part or to modify its terms; if the right thus reserved is not exercised during the life of the settlor the validity of the trust remains unaffected:" Sheasley Trust, 366 Pa. 316, 321.

The court, in Mason Estate, supra, page 491, stated:

"Where, however, settlor in addition to the reservations above mentioned, reserves the power to control the trustee as to the details of the administration of the trust, and thus makes the trustee *merely the agent of the settlor*, the scheme bcomes testamentary as to dispositions intended to take effect after death."

The settlor, in the case in issue, has no power as such but only has power as trustee "to vote, sell, redeem, exchange or otherwise deal in or with the stock."

The trustee, therefore, has active duties, and the "Declaration of Trust—Revocable", which Lettie F. Fessler, decedent made during her lifetime, was an inter vivos trust, and the beneficiary, E. Lee Fogleman, acquired an immediate interest in the trust even though the enjoyment of those interests was postponed until the death of the settlor. Upon decedent's death on June 28, 1959, the shares represented by the certificates became the absolute property of E. Lee Fogleman.

This is in accord with holdings in other jurisdictions. See Ridge v. Bright, 244 N. C. 345, 93 S. E. 2d 607; Farkas v. Williams, 5 Ill. 2d 417, 125 N. E. 2d 600; Investors Stock Fund, Inc. v. Roberts, 179 F. Supp. 185, a Montana case.

In the event that we had held that this was a testamentary trust, we would have further held that it was not revoked by the last will and testament dated March 19, 1958. The first paragraph of the will sets forth: "I, Lettie E. Fessler . . . do hereby make my last will and testament and revoke all wills by me at any time heretofore made." There can be no doubt that decedent only intended to revoke any former wills and that she did not intend that the declaration of trust be revoked.

The trust agreement in question is a valid inter vivos trust, and the 653.326 shares of Investors Mutual, Inc., are not the assets of the estate but the property of E. Lee Fogleman.

Accordingly the court enters the following

*Decree*

And now, October 10, 1961, the exceptions are sustained, and it is accordingly adjudged and decreed that the 653.326 shares of Investors Mutual, Incorporated, set forth in the inventory and appraisal be and hereby are stricken and deleted therefrom.