## Spear Estate

*John H. Archer*, for accountants.

*Ragan A. Henry*, trustee ad litem, p. p.

*Murray B. Dolfman*, for Commonwealth.

KLEIN, P. J., December 3, 1964.—By deed dated April 24, 1925, and supplements thereto, Louise Spear, now Louise Spear Smith, transferred and assigned to trustees, her remainder interest in the estate of her grandfather, James Spear, in trust upon terms and conditions more fully recited hereinafter. . . .

Prior adjudications in this trust have been filed by Klein, J., on October 15, 1942; Lefever, J., on March 8, 1951; and by Bolger, J., on November 5, 1959. The present account is a brief or partial account and includes only stock dividends, first carried in principal, but which have been transferred to income in accordance with Pew Trust, 411 Pa. 96 (1963). The occasion of the filing of the present account was the desire of the accountants to secure the approval of such transfer.

This is a most unusual case and must, in many respects, be regarded as *sui generis*. When Louise Spear was approximately 25 years of age and unmarried, she gave evidence of suffering from a nervous disorder which disabled her periodically. At times she was completely well and normal; and at other times she was seriously ill and disturbed. She had a vested remainder in the substantial estate of her grandfather, subject to a life estate in favor of her father. Acting upon the advice of wise counsellors, in order to protect herself from her own improvidence and the unpredictable consequences of her illness, she placed her property in trust by indenture dated April 24, 1925.

The provision of the trust instrument with respect to the income is rather unusual because of the extremely broad powers given to the trustees. It reads:

"1. To manage and control the said real and personal estate and collect the rents, issues, interest, dividends and profits thereof, and after paying thereout proper and reasonable charges and commissions, to pay over to Settlor each and every month such sums or portion of said income as said Trustees in their sole discretion shall deem necessary for the proper support and maintenance of the Settlor for and during the whole term of her natural life, or in their discretion to pay and apply the said income for her benefit, maintenance and support, or to pay such parts thereof to such person or persons as she may from time to time in writing addressed to such Trustee direct. The excess of income over and above such sums in any year during the lifetime of Settlor shall become part of the principal of the Trust and subject to the provisions hereinafter relating to the investment thereof."

The provisions dealing with the disposition of the corpus of the trust estate are exceedingly involved but it will suffice for our purposes to state that the principal would vest in her issue if she had any.

The trust was made irrevocable as to income with the right to alter the disposition of principal in the following language:

"4. The Trust shall be irrevocable as to Settlor's interest hereunder and the life interest of Settlor's mother (but the remainders limited hereunder may be altered and changed by Settlor with the consent of the Trustees by a written instrument duly executed and witnessed) and shall continue during the lifetime of the Settlor and her mother, Lee Henry Robertson, and until the majority of Settlor's youngest child or grandchild living at Settlor's death."

The settlor amended the Deed of Trust by a writing

dated September 10, 1934, and, again, by writing dated July 26, 1950. The instrument was further amended on September 22, 1950. In this amendment settlor provided:

"3 (6). In the event that there shall be no children or issue of deceased children of Settlor living at the time of her death, to pay the sum of Fifteen thousand ($15,000) Dollars to Mary Henry Tripp and to distribute the balance of principal to and among such good and deserving charities as the Trustees may select, in their sole and absolute discretion, but subject nevertheless to such suggestions, if any, as may have been made to them by Settlor either informally, by further amendment to the original Agreement of Trust, or in her last Will.

"4. Except as modified herein, the said Agreement of Trust of April 24, 1925 is hereby confirmed, subject however to the continued reservation by SETTLOR of her right to amend."

The wisdom of the settlor's decision to place her estate in trust has been amply demonstrated over the years. About 1940, she entered into an unfortunate marriage which lasted for a few weeks and was terminated by divorce. During the past 40 years she has suffered recurrent attacks of the nervous disorder from which she is suffering, requiring costly private institutional care over extended periods. The settlor is now 65 years of age, unmarried, childless and long past the age of child bearing. She is confronted with an uncertain future with respect to her mental health, which may involve large expenditures for her care. Neither she nor her trustees have the power to invade principal for this purpose. Only the income is available to her.

Although personally sympathetic to the settlor's position, Mr. Henry, the trustee ad litem, by virtue of his office and at the direction of the auditing judge, was obliged to present such arguments as could be reason-

ably advanced to oppose the accountant's efforts to procure for her the stock dividends covered by the present accounting. This was his duty and he is to be commended for the splendid manner in which he has performed it. In Mark's Estate, 38 D. & C. 489, 492 (1940), we said, in discussing the responsibilities of a guardian and trustee ad litem:

". . . It was manifestly a mistake for him to have agreed to the apportionment requested by the life tenant. It was his duty, as an appointee of this court representing persons who cannot speak for themselves because of disability, to defend vigorously every legal right which they possessed. He has no authority to surrender without consideration any right or property which is theirs regardless of his natural sympathy for decedent's widow."

Mr. Henry's first suggestion is that when a settlor makes a gift of income and defines income as including rents, issues, interest, dividends and profits and uses such other language as is consistent with a reference to cash items, small stock dividends are not properly considered income items. We reject this position without delving into the technical implication of this language.

The following statement found in the opinion of Justice, later Chief Justice, Schaffer in Nirdlinger's Estate (No. 2), 327 Pa. 171, 173 (1937), has been cited on numerous occasions to demonstrate the law's concern for the interests of income beneficiaries:

". . . The foundational reason for this conclusion is that in nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment of principal to be paid to far off remaindermen. Life tenants should not be required to starve in order that remaindermen may ultimately feast."

Surely, it would be difficult to find a case where this principle is more applicable. We are dealing with a situation where a young, inexperienced girl, suffering from a nervous disorder, wisely placed her assets in trust with a highly regarded corporate trustee and her family lawyer, to protect herself from the serious complications which could result from her sickness and her ignorance of financial affairs. Every doubt must be resolved in her favor. We must assume that she intended to retain for herself the fullest possible benefits from the income earned by the trust she created, while safeguarding the principal against her own mistakes. Every effort should be made to see that she does not "starve," in order that charities not yet designated "may ultimately feast." We therefore conclude that the settlor is not precluded from receiving the small stock dividends listed in the account by reason of the language she used in describing the fruits of the trust she created.

Moreover, we see no objection to the use of a Brief Account, such as has been filed in the present case, as a vehicle to decide the question as to whom the small stock dividends should be distributed. On the contrary we think this is a practical and economical way to present such issues to the court for determination and is certainly authorized by section 702 of the Orphans' Court Act of 1951.

We are more concerned with Mr. Henry's contention that although the settlor executed the inter vivos Trust Indenture in 1925, it must be regarded as a post 1945 trust because it was amended and reaffirmed in 1950.

Mr. Henry relies in a large measure upon Heusted Estate, 403 Pa. 185 (1961). In that case the settlor created an inter vivos trust providing for the payment of income to himself for life and reserving the right to revoke or amend the trust in whole or in

part. He changed the scheme of distribution by amendments and supplements executed in 1951 and 1956. It was held that these amendments constituted a "conveyance of assets" within both the language and spirit of section 11 of the Estates Act of 1947, and the surviving spouse, having elected to take her widow's statutory share of decedent's estate, was entitled to take her intestate share of the trust assets. In arriving at his decision, Mr. Justice, now Chief Justice, Bell said, at page 192:

". . . If the language of a remedial act is ambiguous it must be literally construed, and if two interpretations are reasonably possible or there is reasonable doubt as to its applicability or inapplicability to particular facts, the interpretation and application which favors the ["surviving spouse," in this case] widow must be adopted. Cf. Henderson Estate, 395 Pa. 215, 149 A. 2d 892; Behan Estate, 399 Pa., supra; Brown Estate, 384 Pa. 99, 119 A. 2nd 513."

Just as the court in Heusted Estate was duty bound to favor the surviving spouse to protect her rights as widow, so, in the present case, we must give the settlor the benefit of every reasonable doubt in construing this trust indenture.

In Fisher Estate, 26 D. & C. 2d 351, 368 (1962), in which a settlor was attempting to reform an inter vivos trust indenture which he had executed, we said:

"We repeat what we said in Friedrich Estate, 26 D. & C. 2d 51, 57-58:

" 'We must also bear in mind the fact that the entire trust res consists of settlor's own money, voluntarily placed in trust by her. Consequently, we must approach this problem in a benign spirit, making every effort to give effect to her obvious intentions. All doubts are to be resolved in favor of the donor whose property has become the subject of the trust. In Schautz

Trust, 395 Pa. 605 (1959), Mr. Justice Musmanno said at p. 612:

" ' "Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of the trust are not to become weapons against him unless no other interpretation is possible." See Goodell's Estate, 53 D. & C. 13, 21 (1945).' "

In Heusted's Estate, the rights of all of the parties were irrevocably fixed when the settlor died. In the present case, their rights are still fluid. When the settlor executed the 1950 amendment to the trust she retained for herself the same continued reservation of her right to amend which is contained in the original 1925 instrument. We cannot therefore say that this is a 1950 trust. She may, with the consent of the trustees, amend this trust again tomorrow, further changing the method of distributing the principal. If this were done, this would be, under Mr. Henry's theory, a 1964 trust, in which case it would be subject to the provisions of Act of August 1, 1963, P. L. 442, which directs that stock dividends of six percent or less shall be deemed income. Of course, upon settlor's death, the rights of all persons who may have an interest in the trust estate would be definitely fixed. If further amendments are made to the trust indenture, the effect thereof would be determined then. We therefore conclude that, for the purposes of the present audit, this is a pre-1945 trust and that under the authority of Pew Trust, 411 Pa. 96 (1963), all of the stock dividends contained in the Brief Account which is before us for audit should be awarded to Louise Spear, now Smith, the settlor income beneficiary, and they will be so awarded.

The trustee ad litem objects to a credit taken in the account by the trustees in the amount of $739.61, be-

ing five percent of the value at which the stock dividends in question are carried in the account. He bases his objection on the grounds that these stock dividends constitute part of the principal and that, as such, in the absence of extraordinary circumstances or special provision in the instrument creating the trust, commissions thereon are properly charged only when the trust terminates or the trustee's relation to the trust ends: Williamson Estate, 368 Pa. 343 (1951); Snyder Estate, 346 Pa. 615 (1943); Bosler's Estate, 161 Pa. 457 (1894). Since we have concluded that the dividends are to be distributed as income, this argument falls of its own weight. The objection to the credit for commissions taken by the accountants is dismissed. . . .

And now, December 3, 1964, the account is confirmed nisi.