**Mitchell Estate**

*Edward B. Duffy* and *Robert K. Duffy*, for accountant.

*Murray I. Blackman* and *Paul E. Bomze*, of *Kleinbard, Bell & Brecker*, for surviving widow.

TAXIS, P. J., March 13, 1972.—The first and final account of Joseph J. Mitchell, executor, was examined and audited by the court on December 6, 1971, and a continued audit on February 18, 1972.

The account shows a balance for distribution of $78,224.72 composed of: personal articles specifically bequeathed to testator's brother set forth on the second page of the inventory and appraisement, $95; reserve fund from proceeds of the sale of New York real estate, $800; and cash.

The account sets forth the payment of $8,500 on account of transfer inheritance tax. The register of wills claims additional tax, and in the petition for adjudication, accountant recites that still further tax may be due on items which have not been shown in the inventory or account, and also because the widow's election, discussed below, has raised questions concerning the precise amount of distribution to each beneficiary. The balance of transfer inheritance tax found to be due is hereby awarded to the register of wills, payment thereof to be reflected in the schedule of distribution hereinafter directed to be filed.

Blanche E. Mitchell, surviving spouse, has claimed the family exemption and it has been paid.

Since the filing of the account, accountant has paid $29.95 to the Internal Revenue Service as additional estate income tax for 1970, and has requested and is hereby allowed credit for said amount. It is set forth in the petition for adjudication that the 1971 income tax has not been paid, and accountant is directed to pay such tax when ascertained and to reflect said payment in the schedule of distribution.

The Federal Estate Tax Return has not been audited, and accountant has requested that the sum of $2,000 be set aside to cover possible additional tax and also certain additional income taxes which decedent's records indicate may be due. Accordingly, the sum of $2,000 is awarded back to accountant, and any balance remaining after the said tax liabilities have been determined and paid is awarded to the party or parties entitled thereto without further accounting.

By an election dated April 6, 1971, Blanche E. Mitchell has elected to take against decedent's will and also against two inter vivos conveyances of funds by decedent. One is a checking account at the Citizens Bank and Trust Company of Middleton, Pa., in the names of decedent and Joseph J. Mitchell, his brother, as joint tenants with the right of survivorship; the other is a savings account at the Maryland National Bank, Baltimore, titled in the name of decedent in trust for Blanche E. Mitchell. By his will, decedent left 20 percent of his estate to Joseph J. Mitchell, his brother; 15 percent to Sandra Lee Mitchell, a niece; 15 percent to Frank E. Mitchell, a nephew; and the balance of 50 percent to his wife. However, this latter bequest was only to be made available to her at the rate of $300 per month reduced by certain other benefits coming to her as a result of decedent's death; moreover, any balance remaining at her death was given to the aforesaid nephew and niece.

The spouse's election was made under the provisions of section 8 of the Wills Act of April 24, 1947, P. L. 89, as amended, 20 PS §180.8, and its corollary, section 11 of the Estates Act of April 24, 1947, P. L. 100, as amended, 20 PS §301.11. Each of these statutes requires, as a condition of their invocation, that an election made under one also must be made as to the property encompassed by the other, so long as the

electing spouse is a beneficiary of both the will and one or more lifetime conveyances. According to section 11(a), supra, the inter vivos conveyances which are reached by such an election are those where the decedent retained "a power of appointment by will, or a power of revocation or consumption over the principal thereof." Thus, while these acts principally protect the surviving spouse from fraudulent deprivation of marital rights, Behan Estate, 399 Pa. 314, at the same time they prevent a survivor from accepting the benefits of a will or conveyances which might favor him in excess of the statutory amount, while at the same time taking a full statutory share of dispositions made by decedent for others. However, not every inter vivos conveyance is within a surviving spouse's election. The statutory language which describes those which are, supra, indicates that not only must decedent have had a right at his death to exercise some control over the property in question, but must also have had a substantial right to enjoy it himself or exercise some basic element of ownership. See Commission's Comment to original section 11, Estates Act, supra, following 20 PS §301.11; cf. Henderson Estate, 395 Pa. 215.

Accountant makes no objection to the election as filed, but contends that the widow must also elect to take against two other savings accounts, containing over $24,000, held by decedent and Blanche E. Mitchell as tenants by the entireties. This issue was previously before this court in Orth Estate, 89 Montg. 217, 18 Fiduc. Rep. 26 (1967). We there ruled that a widow's election under section 11, supra, did not encompass entireties property, and after careful reconsideration, we believe that decision was sound.

There is no need to repeat in detail what was said in Orth Estate, supra. But it is fundamental that the unique nature of entireties property under Pennsyl-

vania law prevents either tenant from withdrawing, using or disposing of any entireties property for his or her own benefit or purposes, to the exclusion of the other. Severance by agreement is possible, but since each tenant owns all of the property, there is none over which *one* of them can exercise individual dominion. Any unilateral action is impermissible with regard to the rights of the other tenant, Alcorn v. Alcorn, 364 Pa. 375; Shapiro v. Shapiro, 424 Pa. 120; and it follows, therefore, that entireties property is not property over which decedent could retain for himself any individual power of appointment, revocation or consumption. And even if a bank or other institution, to protect itself, creates an arrangement whereby one tenant may deal with an entireties account, any transaction by one tenant which prejudices the other is ineffective as between the tenants. Cf. Ford Estate, 431 Pa. 185.

Accountant argues, principally on the equities, that entireties accounts should be included in the elective property; indeed, in this very case, the widow has had to elect against a tentative trust account held by decedent for her benefit. Accountant also points out that section 11, supra, would require a spouse to elect against a will even if he or she were sole beneficiary. Regardless, however, of the fact that some similarities in form and result exist in these different methods of transmittal of property at death, the statutory language includes tentative trusts, see Graham's Estate, 3 D. & C. 2d 218, 4 Fiduc. Rep. 467, and wills, but not entireties property, though it would have been simple for the legislature to include this common type of husband-wife ownership had it intended such property to be within section 11.

Accountant further argues that we should imply from the language of section 11 that, for its purposes

at least, the basic characteristic of nonseverability of an estate by the entireties was meant to be modified; but this would make estates by the entireties and other survivorship tenancies identical, and to accomplish such a radical change, the intent of the legislature to do so would have to appear much more clearly than it does in section 11. Finally, accountant's contention that one tenant by the entireties has, in fact, a "power to consume," as long as such consumption is for the benefit of both spouses, is an exercise in semantics, since this term has a well-established significance in trust law and refers in its present context to the *retention*, by the settlor or conveyor, of such a right for his own benefit or enjoyment. We accordingly hold that the entireties accounts in question are not within the provisions of section 8 of the Wills Act or section 11 of the Estates Act, supra, and do not come within the election of Blanche E. Mitchell.[1]

---

[1] The proposed Uniform Probate Code would apparently yield the opposite conclusion. However, this results from a broader approach to the determination of what a surviving spouse is entitled to receive from the deceased spouse's estate, and not from a different construction of statutory language like that before us. In section 2-202 the code defines an "augmented estate" against which a surviving spouse may elect. As with present Pennsylvania law, this encompasses the net probate estate, plus "transfers by the decedent during marriage to persons other than the surviving spouse;" here there are included transfers, inter alia, with retained life estates or powers to consume or revoke, of joint interests, or those made in contemplation of death. The "augmented estate," however, also includes property derived by the spouse from decedent, examples of which are interests in trusts created by decedent, insurance benefits of most types, pensions, disability compensation, rights in community property, jointly owned or entireties property, etc. There is no counterpart to this latter concept in present Pennsylvania law, except to the limited extent to which section 11 of the Estates Act applies to conveyances for the benefit of the surviving spouse. Thus, in the code, the result partly achieved by section 11, supra, is carried to a logical conclusion as set forth in the comment to section 2-202.

Subject to distributions heretofore properly made and subject to the views expressed in this adjudication, the net ascertained balances of principal and income are awarded as set forth under the last paragraph of the petition for adjudication.

The accountant shall file a schedule of distribution in duplicate.

The account is confirmed, and it is hereby ordered and decreed that Joseph J. Mitchell, executor, as aforesaid, forthwith pay the distributions herein awarded.

And now, March 13, 1972, this adjudication is confirmed nisi.